455 F.2d 650
 3 ERC 1129, 1 Envtl. L. Rep. 20,478
 NATIONAL HELIUM CORPORATION, Plaintiff-Appellee,
v.
Rogers C. B. MORTON, Secretary of the Interior, and Elburt
F. Osborn, Director, Bureau of Mines, Department of the
Interior, Defendants-Appellants, Cities Service Helex, Inc.
and Phillips Petroleum Company, Intervenors-Appellees.
 No. 71-1369.
 United States Court of Appeals,
Tenth Circuit.
 Oct. 4, 1971.
 
 Robert L. Ackerly, of Sellers, Conner & Cuneo, Washington, D. C. (Herbert L. Fenster, of Sellers, Conner & Cuneo, Washington, D. C., Emmet A. Blaes, of Jochems, Sargent & Blaes, Wichita, Kan., Wendell J. Doggett, Gen. Counsel and Secretary, National Helium Corp., Kansas City, Mo., and Harvey G. Sherzer, of Sellers, Conner & Cuneo, Washington, D. C., of counsel, on the brief), for plaintiff-appellee.
 Judith S. Ziss, Atty., Dept. of Justice (L. Patrick Gray, III, Asst. Atty. Gen., Robert J. Roth, U. S. Atty., and Alan S. Rosenthal, Atty., Dept. of Justice, on the brief), for defendants-appellants.
 Mark H. Adams, II, Wichita, Kan. (Jack W. Wertz, George E. Peabody, Oklahoma City, Okl., Mark H. Adams and William S. Richardson, Wichita, Kan., on the brief), for intervenor-appellee, Cities Service Helex, Inc.
 William H. Allen, of Covington & Burling, Washington, D. C. (Joseph W. Kennedy, of Morris, Laing, Evans & Brock, Wichita, Kan., R. Price Howard, Asst. Gen. Atty., Phillips Petroleum Co., Bartlesville, Okl., of counsel, on the brief), for intervenor-appellee, Phillips Petroleum Co.
 Before BREITENSTEIN, HILL and DOYLE, Circuit Judges.
 WILLIAM E. DOYLE, Circuit Judge.
 
 
 1
 The Secretary of the Interior in this case has appealed the decision of the United States District Court for the District of Kansas, 326 F.Supp. 151, in which an injunction was entered prohibiting the termination by the Secretary of a contract for the purchase of helium from appellee companies. It presents jurisdictional and procedural problems, but the decisive question is primarily one of substance. It is whether the Secretary could summarily terminate the purchase contract without carrying out the requirements of the National Environmental Policy Act,[1] which section provides that federal agencies shall, in connection with major actions affecting the quality of the human environment, consider and make a statement as to the environmental impact of the proposed act and other environmental consequences. The District Court in granting the injunction held that it had jurisdiction and that the statement of the Secretary in terminating the contract contained no reference to consideration by the Secretary of the application of the NEPA. The court also held that the NEPA applies to the Helium Act and that, absent the injunction, helium would be lost in the atmosphere.
 
 
 2
 * Under the terms of the Helium Act[2] the Secretary of the Interior is authorized to enter contracts of no more than 25 years' duration for the "acquisition, processing, transportation, or conservation of helium."[3] The objects of this Act as shown by Sec. 167m are first, to develop a helium producing industry in the private sector and, secondly, to assure a steady supply of helium for "essential Government activities."[4] The meaning of "essential Government activities" as shown by the legislative history of the Act is the needs principally of the Atomic Energy Commission, the Department of Defense and the National Aeronautics and Space Administration.[5] The sponsors of the Act predicted that 70 percent of all helium produced would be used by government agencies and another 20 percent by government contractors, whereas only 10 percent would be used by private industry.[6]
 
 
 3
 Under the Act the Secretary is not required to purchase any helium. The entire matter is left to his discretion.[7] In deciding to terminate the contract[8] the Secretary stated that the basic purposes of the Act had been fulfilled, that is that the 25-year purchase program envisioned by the Act was unnecessary because as of the time of termination his estimates showed that there was enough helium in storage to fulfill government requirements through 1995. The Secretary notified the companies on January 26, 1971, that the contracts would be terminated effective March 27, 1971. In his letter he stated that there had been a diminution in the requirements of helium for essential governmental activities, and that there had been new discoveries since the execution of the contract, which discoveries had provided large sources of available helium if more of the gas "is required for essential government activities than is now in storage or will be recovered in government plants."
 
 
 4
 In its complaint the plaintiff, National Helium Corporation, joined by intervenors, Cities Service Helex, Inc. and Phillips Petroleum Company, has alleged that the Secretary's action was procedurally defective because he failed to hold public hearings in accordance with the Helium Act and the Administrative Procedure Act, and in that he had failed to consult the Council on Environmental Quality. The prayer of each contractor was for preliminary injunction preventing termination of the contract. In anticipation of the Secretary's raising jurisdictional questions as to standing, the companies alleged that they were seeking to protect not only their own financial interests, but were also appearing as private attorneys general in order to protect the public interest in the helium program. In this latter connection they have alleged that if the helium is not extracted by them from the natural gas before the natural gas is delivered to the consumer, the helium would be vented into the atmosphere and lost when the natural gas was consumed as fuel.
 
 
 5
 In our judgment the District Court had jurisdiction to entertain the suit and did act properly in issuing injunctive relief in view of the Secretary's failure to observe the requirements of the NEPA prior to termination. Apart from this one aspect, we view the termination as action which is entirely within the discretion of the Secretary, involving as it does a contract which was entered into in the first instance solely on the basis of the Secretary's decision.
 
 II
 
 6
 The government's claim is that the District Court lacked jurisdiction to review the action of the Secretary because the subject matter involved a government contract in which the amount in controversy exceeds $10,000, and that the sole remedy available is an action in the Court of Claims under the Tucker Act, 28 U.S.C. Sec. 1346. The government further maintains that the plaintiffs lack standing because they do not qualify as private attorneys general purporting to act in the public interest since the magnitude of their own private interests are manifestly opposed to the interests of the public.
 
 
 7
 The District Court thought that it was "passing strange" to see the giants of the oil and gas industry representing the public interest, but concluded that they were not per se disqualified to occupy this role and concluded that Sec. 10 of the Administrative Procedure Act gives standing to government contractors seeking review of administrative action challenged as arbitrary and capricious, abusive of discretion, or otherwise illegal.
 
 
 8
 We are of the opinion that the contention that this was not an agency action within the meaning of Sec. 702 of the Administrative Procedure Act is untenable since the termination is not merely a contract termination but the termination of an extensive program authorized by act of Congress. The Administrative Procedure Act defines agency action as "an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act."[9] We must therefore hold that the termination of a program as extensive as this which also poses substantial environmental problems qualifies under the mentioned definition. It cannot be denied that the companies have a genuine substantial financial interest in the termination of the contract. But it is their asserted representation of the public interest-which from their personal standpoint is admittedly less important than their private financial stake-which in final analysis justifies their seeking judicial review. It is the Secretary's violation of or failure to comply with the mandate of the Environmental Protection Act which furnishes a jurisdictional basis.[10] If the contracting parties were not invoking NEPA, the problem of federal question jurisdiction would be perhaps somewhat tenuous.[11] Their remedy under the Tucker Act in the Court of Claims could arguably at least be adequate. At the same time, this Court of Claims remedy is not preemptive merely because it sounds in contract.
 
 III
 
 9
 The Secretary next argues that he is protected from suit here by the doctrine of sovereign immunity because 1) the United States is the real litigant; 2) there is no statute authorizing injunctive interference with the termination of a government contract; and 3) the Administrative Procedure Act does not remove the bar to suits of this nature. However, as previously noted, we are of the view that the conservation and environmental issue makes the difference. It serves to distinguish this case from Wells v. Roper, 246 U.S. 335, 38 S.Ct. 317, 62 L.Ed. 755 (1918) and Larson v. Domestic and Foreign Commerce Corp., 337 U.S. 682, 69 S.Ct. 1457, 93 L.Ed. 1628 (1949). The fact that the Secretary was compelled by law to act in accordance with the NEPA and failed to do so brings this case within the exception noted in Dugan v. Rank, 372 U.S. 609, 83 S.Ct. 999, 10 L.Ed.2d 15 (1963), i. e. it is action which is contrary to law; and cf. Pankey Land & Cattle Company v. Hardin, 427 F.2d 43 (10th Cir. 1970), which involved the mere exercise of discretion by the Secretary of Agriculture. As we heretofore have noted, the Administrative Procedure Act authorizes review of agency action in cases such as this one.[12]
 
 
 10
 It would be repetitious to discuss at length the further argument of the Secretary that the plaintiffs lack standing. We are unable to say that the companies are motivated solely by protection of their own pecuniary interest and that the public interest aspect is so infinitesimal that it ought to be disregarded altogether. It is not part of our function to weigh or proportion these conflicting interests. Nor are we called upon to determine whether persons seeking to advance the public interest are indeed conscientious and sincere in their efforts. True, the plaintiffs are not primarily devoted to ecological improvement, but they are not on this account disqualified from seeking to advance such an interest. No group has a monopoly on working for the public good. Cf. Citizens Committee for Hudson Valley v. Volpe, 425 F.2d 97 (2d Cir. 1970), cert. denied 400 U.S. 949, 91 S.Ct. 237, 27 L.Ed.2d 256 (1970). Neither this cited case nor Environmental Defense Fund, Inc. v. Hardin, 138 U.S.App.D.C. 391, 428 F.2d 1093 so requires. These cases did observe that the litigants there involved were indeed interested in protection of the environment, but this was a factor which enhanced their standing to sue.
 
 IV
 
 11
 The declared purpose of the NEPA[13] is to encourage productive and enjoyable harmony between man and his environment; to promote efforts which will prevent or eliminate damage to the environment; to stimulate the health and welfare of man; to enrich the understanding of the ecological systems and natural resources important to the nation; and to establish a Council on Environmental Quality. It is further stated in subsection (b), 42 U.S.C. Sec. 4331 et seq., that its purpose is to improve and coordinate federal plans, functions, programs and resources to the end that the nation may
 
 
 12
 (5) achieve a balance between population and resource use which will permit high standards of living and a wide sharing of life's amenities; and
 
 
 13
 (6) enhance the quality of renewable resources and approach the maximum attainable recycling of depletable resources. 42 U.S.C. Sec. 4331 (emphasis added.)
 
 
 14
 The statute further requires (42 U.S.C. Sec. 4332) that all agencies of the federal government shall
 
 
 15
 (C) include in every recommendation or report on proposals for legislation and other major Federal actions significantly affecting the quality of the human environment, a detailed statement by the responsible official on-
 
 
 16
 (i) the environmental impact of the proposed action,
 
 
 17
 (ii) any adverse environmental effects which cannot be avoided should the proposal be implemented,
 
 
 18
 (iii) alternatives to the proposed action,(iv) the relationship between local short-term uses of man's environment and the maintenance and enhancement of long-term productivity, and
 
 
 19
 (v) any irreversible and irretrievable commitments of resources which would be involved in the proposed action should it be implemented.
 
 
 20
 The statement thus prescribed is to be made available to the President, the Council on Environmental Quality, and the public. This statute does not limit the authority of any governmental agency in any permanent or conclusive manner. It does, however, contain a mandate that action can be taken only following complete awareness on the part of the actor of the environmental consequences of his action and following his having taken the steps required by the Act. It is undeniable that the Act compels the Department to comply with its provisions when action is being taken having to do with a depletable resource. Here also there is evidence of "new and expanding technological advances" directly related to the need for an application of this resource.
 
 
 21
 It is undisputed that the Secretary has not considered the environmental impact and has not taken any steps to fulfill the requirements of the NEPA. Indeed the Secretary has not even followed the regulations of his own Interior Department purporting to implement the statute. The NEPA also establishes a Council (in 42 U.S.C. Sec. 4344). In order to carry out the mandate of the statute the Council must be apprised of agency actions having environmental consequences. It does not appear from the statute that the agency action must await any responsive comments from the Council. Instead, the apparent purpose of the Council is to review federal programs and activities so as to keep the President informed on the extent to which these activities may affect the policies set forth in the Act. Thus, the Council's function is in no way regulatory. Its purpose is to take information and to coordinate the reporting of governmental activities so as to aid the policy makers.
 
 
 22
 The mandatory nature of the NEPA is emphasized in recent decisions. See, for example, Calvert Cliffs' Coordinating Committee v. United States Atomic Energy Commission, 449 F.2d 1109 (D.C.Cir.1971). The decisions are also clear that the mandates of the NEPA pertain to procedure and do not undertake to control decision making within the departments.[14]
 
 
 23
 As we view it then the purposes of the NEPA are realized by requiring the agencies to assess environmental consequences in formulating policies, and by insuring that the governmental agencies shall pay heed to environmental considerations by compelling them to follow out NEPA procedures.
 
 
 24
 The Secretary in the instant case proposes to take an action which has environmental consequences, namely rapid depletion of the helium resources of the country. Whether the Secretary's proposed action has significant longrange consequences, or whether the environmental effects are insignificant in relationship to the countervailing government interests, are decisions which are left to the Secretary. The important thing is that he must consider the problem. As was said by the D.C. Circuit in Calvert Cliffs', supra:
 
 
 25
 The sweep of NEPA is extraordinarily broad, compelling consideration of any and all types of environmental impact of federal action.
 
 
 26
 In oral arguments the appellees have expressed a desire for extensive administrative proceedings. We do not see any such requirement. This is an intradepartmental matter in which the Secretary fulfills his obligation by following the mandate of the NEPA. Neither the APA nor the NEPA compels him to appoint an examiner and conduct hearings. Indeed the Department has NEPA procedures in its manual. He ought to at least follow these. There is no indication that Congress in enacting the NEPA intended to impose extensive procedural impediments to Department action.
 
 
 27
 Having concluded that the court had jurisdiction in this cause and that the NEPA fully applies to the action here involved, it follows that the District Court acted properly in enjoining the termination program, at least pending the compliance by the Secretary with the NEPA.
 
 
 28
 We agree with the Secretary that the matter here involved is urgent and should be expedited in every possible way.
 
 
 29
 The judgment is affirmed.
 
 
 
 [1]
 42 U.S.C. Sec. 4321 et seq. (hereinafter referred to as the NEPA)
 
 
 [2]
 50 U.S.C. Sec. 167 et seq., as amended in 1960
 
 
 [3]
 50 U.S.C. Sec. 167a(a) (2)
 
 
 [4]
 This section so provides:
 It is the sense of the Congress that it is in the national interest to foster and encourage individual enterprise in the development and distribution of supplies of helium, and at the same time provide, within economic limits, through the administration of this chapter, a sustained supply of helium which, together with supplies available or expected to become available otherwise, will be sufficient to provide for essential Government activities. 50 U.S.C. Sec. 167m.
 
 
 [5]
 106 Cong.Rec. 18544 (1960) (remarks of Senator Allott)
 
 
 [6]
 Id. at 18544, 19546 (remarks of Senator Allott)
 
 
 [7]
 Id. at 18545, 18608 (remarks of Senators Allott and Carroll)
 
 
 [8]
 The termination clause under which the Secretary acted reads as follows:
 Buyer may, at its option, terminate this contract at any time if, (1) in the opinion of the Secretary of the Interior, the discovery of large new helium resources or a substantial diminution in helium requirements or any circumstance of similar nature should occur which would make the continued operation of Seller's plant and the continued purchase of helium-gas mixture extracted therein unnecessary to accomplish the purposes of the Act or any amendment thereto, or (2) a material circumstance of force majeure making it impracticable or impossible for either Buyer or Seller to carry out it obligations under this contract which circumstance cannot be remedied with reasonable dispatch.
 
 
 [9]
 5 U.S.C. Sec. 551
 
 
 [10]
 We deem it unnecessary to denominate the contractors as private attorneys general
 
 
 [11]
 Citizens to Preserve Overton Park, Inc. v. Volpe, 401 U.S. 402, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971)
 
 
 [12]
 The Supreme Court, in Citizens to Preserve Overton Park, Inc. v. Volpe, 401 U.S. 402, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971), Association of Data Processing Service Organizations, Inc. v. Camp, 397 U.S. 150, 90 S.Ct. 827, 25 L.Ed.2d 184 (1970) and Barlow v. Collins, 397 U.S. 159, 90 S.Ct. 832, 25 L.Ed.2d 192 (1970) recently has made it very clear that where there is no statutory prohibition of judicial review, and there is "law to apply" (here the NEPA) thus removing the situation from the APA exception for action committed to agency discretion by law (denoted "a very narrow exception" in Overton Park), all agency action is presumed to be reviewable
 
 
 [13]
 42 U.S.C. Sec. 4321 et seq
 
 
 [14]
 Texas Committee on Natural Resources v. United States, W.D.Texas, 1 Envir. Rpts-Cas. 1303, 1304 (1970); Zabel v. Tabb, 430 F.2d 199 (5th Cir. 1970); Environmental Defense Fund, Inc. v. Corps of Engineers, 325 F.Supp. 749 (E.D.Ark.1971); Pennsylvania Environmental Council v. Bartlett, 315 F.Supp. 238 (M.D.Pa.1970)