579 F.2d 59
 11 ERC 1658, 8 Envtl. L. Rep. 20,506
 Norman O. JETTE and Gertrude A. Jette, husband and wife, and
Izaak Walton Land of Enchantment Chapter, Inc.,
Plaintiffs-Appellants,
v.
Robert H. BERGLAND, Secretary of Agriculture, U. S.
Department of Agriculture, John McGuire, Chief Forester, U.
S. Forest Service, William D. Hurst, Regional Forester
Region III, U. S. Forest Service, Robert M. Williamson,
Supervisor, Gila National Forest, U. S. Forest Service, Roy
Carson, Silver City District Ranger, Gila National Forest,
U. S. Forest Service and Exxon Corporation, et al.,
Defendants-Appellees.
 No. 76-2129.
 United States Court of Appeals,
Tenth Circuit.
 Argued March 15, 1978.
Decided May 11, 1978.
Rehearing Denied Aug. 22, 1978.
 
 Emmett C. Hart, Albuquerque, N. M., for plaintiffs-appellants.
 Kathryn A. Oberly, Dept. of Justice, Washington, D. C. (James W. Moorman, Acting Asst. Atty. Gen., and Raymond H. Zagone, Dept. of Justice, Washington, D. C., on the brief), for defendants-appellees except Exxon Corp.
 John R. Cooney of Modrall, Sperling, Roehl, Harris & Sisk, Albuquerque, N. M. (Robert M. Perry, Exxon Corp., Houston, Tex., and Lynn H. Slade of Modrall, Sperling, Roehl, Harris & Sisk, Albuquerque, N. M., with him on the brief), for defendant-appellee Exxon Corp.
 Before HOLLOWAY, BARRETT and DOYLE, Circuit Judges.
 WILLIAM E. DOYLE, Circuit Judge.
 
 
 1
 This is an action in which the plaintiffs, owners of 4.279 acres, located in the Gila National Forest in New Mexico, seek relief on various legal theories against the Secretary of Agriculture and the Forest Service and Exxon Corporation, the licensee or permittee of the Forest Service, under authority of the Mining Laws of 1872, 30 U.S.C. §§ 21-54 (1970). Having taken early retirement because of health, they had built their home on this land tract. They here attack the activity of Exxon, claiming that it has an adverse affect on the environment, which results in an invalid invasion of the property rights of the plaintiffs and others in the Gila Forest area.
 
 
 2
 Exxon has been engaged in this area in exploration efforts to discover copper. To this end it has conducted very extensive core drilling and has, of course, used heavy equipment to carry out this work. It claims that it has done everything under the direct supervision and with the approval of the Forest Service, and on this account and because of the mining laws under which the authorization has been given, no legal rights of the plaintiffs have been violated. Basically the trial court agreed with this position. It made findings of fact in favor of Exxon and the government representatives with respect to virtually all of the plaintiffs' claims.
 
 
 3
 On this appeal the plaintiffs contend that the findings of the trial court that the noxious fumes and noises were transitory and not serious were clearly erroneous. So also they claim that the finding that there was no interference with the use and enjoyment of the land was clearly erroneous. A similar contention is made with respect to the finding on insufficiency of the evidence of trespass, lack of effect on the surface water, destruction of trees and plant life and lack of effect on the plaintiff Izaak Walton Land of Enchantment Chapter, Inc. It is said also that the court erred in finding that although there was inconvenience and annoyance, it was not the result of any unreasonable or unwarranted utilization of the property by Exxon. Plaintiffs further contend that the Exxon mining locations are invalid and that the court was in error in excluding evidence as to the nature and extent of the filings.
 
 
 4
 Finally, it is contended that the court erred in dismissing the claim of plaintiffs that the actions of Exxon acting under color of law, the 1872 mining laws, and permits of the Forest Service, constituted a major action significantly affecting the quality of the human environment so as to require compliance with the National Environmental Policy Act (NEPA). It is this last contention that there has been a failure to comply with NEPA which appears to have some merit.
 
 
 5
 As to the other issues, it is sufficient to say that the findings are not clearly erroneous. Nor can we conclude that the mining laws of 1872 under which the permits were granted were unconstitutional as contended.
 
 
 6
 The trial court sidestepped the question whether the permits and the plan of the Forest Service constitute a major action significantly affecting the quality of the human environment so as to require an impact statement pursuant to NEPA. It held that the plaintiffs had failed to exhaust their administrative remedies and that, therefore, it was unnecessary to consider whether a NEPA statement was necessary. Our conclusion is that the trial court erred in so ruling. We must hold that the administrative remedies were exhausted and hence the court should have taken up the NEPA issue.
 
 
 7
 The plaintiffs-appellants, Norman O. Jette and Gertrude A. Jette, retired in 1970 and 1971, respectively. As we previously mentioned, they built a home on the 4.279 acres of land within the Gila National Forest. They have resided there since their retirement. According to the allegations of the complaint, they selected this area "after many years of searching for a retirement homesite which would provide natural beauty, tranquility, privacy and other attributes of rights in real property." The Izaak Walton Land of Enchantment Chapter, Inc. is a New Mexico corporation. One of its purposes is the preservation of the natural beauty, life, tranquility and purity of waters of the Gila National Forest. The Jettes and some of the witnesses are members of this organization.
 
 
 8
 About the same time that the Jettes retired, Exxon entered the Gila National Forest under Forest Service permit to begin their surveys. Exxon began core drilling numerous discovery or validation holes near the property of plaintiffs. Exxon surveyed and explored with helicopters and used bulldozers to build roads and to clear core drilling sites. Plaintiffs claim that these activities of Exxon have resulted in substantial and irreparable damage to the entire area including the destruction of thousands of trees and other plant life and the emission of noxious fumes from equipment, all of which have caused the birds to leave the region and have degraded the surface and subsurface water by the dumping of chemical wastes on the land and in the water. Exxon's activities have also, according to the Jettes, destroyed the natural beauty and scenic wonders of the forest.
 
 
 9
 The third claim is that the actions of Exxon constitute a major federal action significantly affecting the quality of human environment, and that the government defendants have failed to prepare an environmental impact statement as required by NEPA. This is the claim which Judge Mechem determined not to be ripe because the plaintiffs had not exhausted their administrative remedies. Whether there was sufficient exhaustion is the important issue in the case. We now consider it.
 
 
 10
 On August 24, 1972, the Forest Service issued a special use permit allowing Exxon to construct access roads to its mining claims. Later (on August 3, 1973), a new permit was granted. This was due to the necessity for building more access roads to serve Exxon's expanded activities. In considering Exxon's application, the Forest Service prepared an Environmental Analysis Report for the purpose of determining whether the issuance of such a permit would affect the quality of the human environment. The Forest Service does this as a prelude to deciding whether an environmental impact statement is required. The Service concluded in this instance that no such impact statement was necessary.
 
 
 11
 In 1974, the Secretary of Agriculture promulgated new regulations concerning use of the surface of lands of the National Forest System in connection with operations authorized by the mining laws. These regulations are in 36 C.F.R. Part 252 (1977). They provide for the approval of an operating plan as a prerequisite to conducting certain operations. On April 30, 1975, Exxon's operating plan was approved by a Forest Supervisor. A new Environmental Analysis Report was prepared and the Forest Service again concluded that an environmental impact statement was not necessary. The existing special use permits were cancelled and the operating plan was in effect until June 30, 1976. On April 2, 1976, the Forest Supervisor approved a supplemental plan of operations to be effective through December 31, 1976. Later this was extended to December 31, 1977. Mr. Jette received notice of this approval thus given and of his right to seek administrative review pursuant to 39 Fed.Reg. 30916 (1974). See the current version of 36 C.F.R. § 211.19 (1977). Mr. Jette on May 1, 1976, wrote a letter in which he objected to Exxon's plan of operation. The Forest Service treated this letter as an appeal. The appeal was pending at the time that the district court dismissed the plaintiffs' NEPA claim (based upon plaintiffs' failure to exhaust administrative remedies). It was still pending at the time judgment was entered on the nuisance claim. On October 20, 1976, the Regional Forester affirmed the decision approving Exxon's plan. Jette was informed of his right to appeal to the Chief of the Forest Service. By letter dated November 17, 1976, he stated that he did not intend to appeal.
 
 
 12
 Whether an environmental impact statement must be prepared is initially a question to be decided by the agency. This decision precedes any judicial review. Grand Canyon Dorries, Inc. v. Walker, 500 F.2d 588, 590 (10th Cir. 1974); Cf. Vermont Yankee Nuclear Power Corp. v. National Resources Defense Council, Inc., --- U.S. ----, 98 S.Ct. 1197, 55 L.Ed.2d 460 (1978).
 
 
 13
 The doctrine of exhaustion of administrative remedies has some flexibility depending on the circumstances. Hence to apply it to a specific case requires an understanding of the purposes of the doctrine and of the administrative structure. In McKart v. United States, 395 U.S. 185, 193, 89 S.Ct. 1657, 23 L.Ed.2d 194 (1969), some of the purposes of the exhaustion doctrine were enumerated. The opinion lists avoidance of premature interruption of the administrative process, allowing the agency to develop the necessary factual background on which to decide the case, giving the agency a chance to apply its expertise or discretion, and the possibility of avoiding the need for a court to intervene. See id. at 193-95, 89 S.Ct. 1657.
 
 
 14
 Not all of these purposes apply to the preparation of an impact statement. The requirement, it should be noted, of the preparation of an impact statement, is imposed on all federal agencies. See 42 U.S.C. § 4332(2)(C). Hence no agency is expected to develop any specialized expertise in this area. Moreover, the preparation of the impact statement is not an "agency action." The agency does not have any discretion the exercise of which court action must await. National Helium Corp. v. Morton, 486 F.2d 995, 1001 (10th Cir. 1973), Cert. denied, 416 U.S. 993, 94 S.Ct. 2405, 40 L.Ed.2d 772 (1974). Exceptions to the requirement of exhaustion have been made in NEPA cases when the drawbacks of the requirement outweigh the advantages in the circumstances of a particular case. See Arkansas Power & Light Co. v. FPC, 170 U.S.App.D.C. 393, 406-07, 517 F.2d 1223, 1236-37 (1975), Cert. denied, 424 U.S. 933, 96 S.Ct. 1146, 47 L.Ed.2d 341 (1976); Ecology Center, Inc. v. Coleman, 515 F.2d 860, 864-67 (5th Cir. 1975).
 
 
 15
 The relevant statutory provision with respect to preparation of impact statements is set forth in 42 U.S.C. § 4332(2)(C), which provides that all agencies of the federal government shall
 
 
 16
 (C) include in every recommendation or report on proposals for legislation and other major Federal actions significantly affecting the quality of the human environment, a detailed statement by the responsible official on
 
 
 17
 (i) the environmental impact of the proposed action,
 
 
 18
 (ii) any adverse environmental effects which cannot be avoided should the proposal be implemented,
 
 
 19
 (iii) alternatives to the proposed action,
 
 
 20
 (iv) the relationship between local short-term uses of man's environment and the maintenance and enhancement of long-term productivity, and(v) any irreversible and irretrievable commitments of resources which would be involved in the proposed action should it be implemented.
 
 
 21
 In construing this the Supreme Court has held that an impact statement, if required, must be prepared at the time the agency makes a recommendation or report on a proposal for federal action. See Kleppe v. Sierra Club, 427 U.S. 390, 405-06, 96 S.Ct. 2718, 49 L.Ed.2d 576 (1976); Aberdeen & Rockfish Railroad v. Students Challenging Regulatory Agency Procedures (SCRAP), 422 U.S. 289, 319-22, 95 S.Ct. 2336, 45 L.Ed.2d 191 (1975).
 
 
 22
 An early opinion construing the Act of Congress is that of the Court of Appeals for the District of Columbia Circuit in Calvert Cliffs' Coord. Com. v. United States AEC, 146 U.S.App.D.C. 33, 449 F.2d 1109 (1971). There the court through Judge Wright concluded that § 102 of NEPA mandates a "particular sort of careful and informed decisionmaking process and creates judicially enforceable duties." Id. 146 U.S.App.D.C. at 39, 449 F.2d at 1115. The court there was dealing with the delay on the part of the AEC in coming to grips with environmental problems and issues. The court said:
 
 
 23
 * * * The Commission's approach to statutory interpretation is strange indeed so strange that it seems to reveal a rather thoroughgoing reluctance to meet the NEPA procedural obligations in the agency review process, the stage at which deliberation is most open to public examination and subject to the participation of public intervenors.
 
 
 24
 Id. 146 U.S.App.D.C. at 43, 449 F.2d at 1119. The court went on to say that the Commission could not justify its time lag under the provisions of the statute. The court also noted "that the sweep of NEPA is extraordinarily broad, compelling consideration of any and all types of environmental impact of federal action."
 
 
 25
 Finally, the court condemned the rules which the Commission had promulgated and ordered the Commission to revise these rules to conform with the letter and spirit of the Act. In our case also we have shameful delay in determining whether an impact statement should be filed. The question whether this is major should have been determined at the time the permits were issued.
 
 
 26
 In our own decision, National Helium Corporation v. Morton, 455 F.2d 650 (10th Cir. 1971), this court emphasized the importance of carrying out the agency's execution of the provisions of NEPA. Id. at 656. We also pointed out that it was unnecessary to pursue extensive administrative proceedings.
 
 
 27
 The significant actions of the Forest Service occurred in 1972, when Exxon was starting its activities. These activities have continued and expanded ever since. We mention this to emphasize that the hour is late for the preparation of such a statement. Moreover, there is evidence that the Forest Service has followed a procedure that allows it to avoid the preparation of an impact statement. We refer to their Environmental Analysis Report. It cannot be argued that this is the same thing as an impact statement under § 4332(2)(C), Supra. Rather it appears merely to create another layer of bureaucratic paperwork while the activity which damages the environment goes on. The question whether an impact statement was appropriate should have been considered at the outset by directly evaluating the magnitude of the operation in terms of statutory standards and not by way of the preparation of this Environmental Analysis Report, which is the invention of the Service.
 
 
 28
 We emphasize here that the responsibility for complying with NEPA rests with the department or service. See Greene County Planning Board v. FPC,455 F.2d 412, 420 (2d Cir.), Cert. denied, 409 U.S. 849, 93 S.Ct. 56, 34 L.Ed.2d 90 (1972). The bureau or agency does not discharge its duty by going through meaningless motions and never facing the question directly, nor does it aid the execution of the provisions of this Act to raise technical questions concerning the exhaustion of department remedies. The Act contemplates that the agency shall take the initiative in considering environmental values. As the District of Columbia Circuit said in Calvert Cliffs' Coord. Com. v. United States AEC, 146 U.S.App.D.C. 33, 43, 449 F.2d 1109, 1119 (1971), in speaking of the agency responsibility, that it "is not simply to sit back, like an umpire, and resolve adversary contentions at the hearing stage. Rather, it must itself take the initiative of considering environmental values at every distinctive and comprehensive stage of the process beyond the staff's evaluation and recommendation."
 
 
 29
 The court is not supposed to cooperate in avoidance of the provisions of this Act of Congress by putting great emphasis upon exhaustion of remedies, which is meaningless. We say meaningless because at the time of the trial court's dismissal of the NEPA claim the initial decision of the Forest Supervisor had been made and appealed to the Regional Forester, so exhaustion was academic. If the Forest Service had prepared an impact statement at the time it prepared the document deciding whether an impact statement was necessary, the present dilemma would have been avoided.
 
 
 30
 Since the trial court's decision, the Regional Forester has affirmed the decision of the Forest Supervisor. Since this latter decision has not been appealed, it is final. See 39 Fed.Reg. 30616 (1974). We are of the opinion, therefore, that the administrative jockeying should now stop and that the court should proceed to determine whether an environmental impact statement is required. The cause is remanded for that purpose.
 
 
 31
 Our decision in Wyoming Outdoor Coordinating Council v. Butz, 484 F.2d 1244 (10th Cir. 1973), will be a helpful guide to the trial court when the cause is considered following remand. In that case it was emphasized that the decision is not one which is to be determined in accordance with § 706(2)(A) of the Administrative Procedure Act, 5 U.S.C.A. § 706(2)(A). We said that "NEPA's specific requirements in § 102 clearly speak in mandatory terms, and do not leave the determination to administrative discretion." The court continued that there is some area of judgment on the part of the department.
 
 The opinion adds:
 
 32
 Of course, there must be a determination whether the statute applies and some area of judgment is involved. However, we are convinced that the compass of the judgment to be made is narrow and that the determination must be reasonable in the light of the mandatory requirements and high standards set by the statute.
 
 
 33
 Under the specific terms of NEPA we feel that the proper standard, as stated earlier, is whether the negative determination was reasonable in the light of the mandatory requirements and high standards set by the statute so as to be "in accordance with the law" another ground of review in § 706(2)(A) which may be applied consistently with the procedural demands of NEPA.
 
 
 34
 Id. at 1249.
 
 
 35
 In the Wyoming case the trial court had ruled that the facts did not call for an environmental impact statement. In reversing the case, the opinion accepted the findings of the trial court that the harvest of timber would have no adverse effect on the elk in the area, that the area was not a pristine forest, and that it was traversed by numerous jeep roads. Notwithstanding that, this court ruled that the case was a compelling one for invoking NEPA because there would be 46 clearcut areas in which timber would be removed covering 670 acres, and that under the high standards set by the statute, the NEPA provisions applied to the case, involving as it did federal action significantly affecting the human environment. Although the full facts concerning the nature and character of the area in question are not before us, there are similarities between our case and Wyoming Outdoor Coordinating Council.
 
 
 36
 We have considered the other points raised by appellants. The court dismissed the appellants' nuisance claim. The trial court found that there was no substantial and irreparable damage and that there was no evidence of trespass, and that there was no interference with the use and enjoyment of the land. Since these findings are not clearly erroneous, we must affirm the judgment of dismissal.
 
 
 37
 As to the alleged error in excluding of evidence as to the validity of Exxon's claim, no showing has been made that any of the excluded evidence was relevant to the issues being tried, so we affirm these rulings as well.
 
 
 38
 Finally, we have considered the numerous assertions that the mining laws are unconstitutional. The Supreme Court has held that the power over the public lands given to Congress is "without limitation." Kleppe v. New Mexico, 426 U.S. 529, 539, 96 S.Ct. 2285, 49 L.Ed.2d 34 (1976). The other constitutional contentions are also lacking in merit and the trial court was entirely correct in refusing to convene a three-judge court.
 
 
 39
 Accordingly, the judgment of the district court is affirmed with the exception of its ruling on the NEPA claims. With respect to this the cause is remanded for the trial court to proceed to determine at once the issue involving the preparation of an environmental impact statement. It is so ordered.
 
 BARRETT, Circuit Judge, dissenting:
 
 40
 The Forest Service determined that under all of the circumstances an EIS was not necessary. While I believe that the district court should have expressly reached this issue, it seems to me that the district court implicitly did so by finding that Jette had not exhausted the remedies made available to him and which he intentionally by-passed in favor of the instant action.
 
 
 41
 The filing of an EIS is not to be treated as the beginning and the end of all things for environmental consideration. The instant case is, in my view, a perfect example of a federal agency which pursued the NEPA mandates in a common sense, intelligent manner, completely conscious of its obligations to protect the natural and human environment. In addition, it is noted that Exxon displayed a high degree of concern for environmental matters in preparing its various "Plans of Operation" which it submitted to the Forest Service, which, in turn, prepared detailed Environmental Analysis Reports. These reports were as detailed as an EIS and because this is so, the Forest Service properly determined that an EIS under NEPA Was not necessary.
 
 
 42
 Jette disregards the many obligations cast upon the Forest Service in the administration of the forest lands. It is particularly in recognition thereof that I would hold that the Forest Service meticulously met all of the obligations imposed upon it under NEPA within the framework of the existing law dealing with the administration of the forest lands. The Forest Service must recognize the "Multiple Use" requirement defined in 16 U.S.C. § 531 designed to effect the policy of the Congress as set forth in 16 U.S.C. § 528 ". . . that the national forests are established and shall be administered for outdoor recreation, range, timber, watershed, and wildlife and fish purposes." And, critical to this case, the Forest Service is further required to recognize that the forest lands are subject to the Mining Law of 1872, as supplemented by the Multiple Use-Sustained Yield Act of 1960 and the National Mining and Minerals Policy Act of 1970.
 
 
 43
 Jette has been vocal in his insistence that the Forest Service, which he chose to unjustifiably accuse of conducting a "Kangeroo Court System" which "reaches its zenith in Fascist state but, unfortunately, is Emulated by the Federal Bureaucracy," is arbitrary and uncaring. This is nonsense. Jette intentionally by-passed administrative remedies which were proper and meaningful. See: Vermont Yankee Nuclear Power Corp. v. Natural Resources Defense Council, Inc., --- U.S. ----, 98 S.Ct. 1197, 55 L.Ed.2d 460 (1978); Federal Power Commission v. Transcontinental Gas Pipe Line Corp., 423 U.S. 326, 96 S.Ct. 579, 46 L.Ed.2d 533 (1976).