AMERICAN DAIRY OF EVANSVILLE,
INC., et al., Appellants,

v.

Robert BERGLAND, Secretary of
Agriculture, et al.

No. 77–1926.

United States Court of Appeals,
District of Columbia Circuit.

Argued 3 Oct. 1978.

Decided 24 March 1980.

Rehearing Denied July 1, 1980.

Robert N. Sayler, Washington, D. C., with whom Joanne B. Grossman, Washington, D. C., was on brief, for appellants.

Kenneth M. Raisler, Asst. U. S. Atty., Washington, D. C., with whom Earl J. Silbert, U. S. Atty.*, John A. Terry, Michael W. Farrell, Nathan Dodell, Asst. U. S. Attys., and Garrett B. Stevens, Atty., Dept. of Agriculture, Washington, D. C., were on brief, for appellees.

Before ROBINSON and WILKEY, Circuit Judges and GREENE,** United States District Judge for the District of Columbia.

Opinion for the Court filed by Circuit Judge WILKEY.

Dissenting opinion filed by Circuit Judge SPOTTSWOOD W. ROBINSON, III.

WILKEY, Circuit Judge:

This appeal involves a provision in certain milk marketing orders whereby retroactive notice is given of Class II prices that milk handlers must pay producers. Appellant handlers and two dairy associations filed suit in the district court seeking judicial review of the retroactive notice provision. The district court granted in part the motion of appellees Department of Agriculture and various officials to dismiss the suit on grounds of mootness and failure to exhaust

---

* United States Attorney at the time the brief was filed.

** Sitting by designation pursuant to 28 U.S.C. § 292(a) (1976).

administrative remedies, and granted their motion for summary judgment as to those issues over which the court found it had jurisdiction. For reasons to be discussed, we reverse the decision of the district court and remand the case with instructions to return it to the Secretary of Agriculture for further proceedings consistent with this opinion.

## I. BACKGROUND

### A. *Statutory Framework*

The Agriculture Marketing Agreement Act of 1937[1] authorizes the Secretary of Agriculture to regulate milk marketing and the relations between producers and handlers of milk. 7 U.S.C. § 608c(5) authorizes the Secretary to classify milk received by handlers according to its use and to establish minimum prices that handlers shall pay for each such class of milk and the time when payments shall be made. The methods for determining prices for the different classes of milk and time of announcement are set out in approximately fifty federal milk marketing orders currently in effect.[2]

Such milk marketing orders are issued in formal rulemaking proceedings with prior notice and hearing. The Act provides that any handler may petition the Secretary for relief from any provision of an order believed to be "not in accordance with law."[3] By regulation, administrative review of the orders is first made by an Administrative Law Judge, subject to review by the Secretary.[4] The Secretary has delegated his statutory review authority to the Judicial Officer of the Department of Agriculture.[5]

The district court has jurisdiction to review the ruling of the judicial officer on a petition for review.[6]

### B. *The Course of These Proceedings*

The relevant marketing orders classify milk into two and sometimes three classes. Class I is the largest class, and includes milk that is put to a fluid use. Class II is used to produce soft products such as yogurt, ice cream, and cottage cheese. Class III milk is used to produce hard products such as butter, powder, and cheese.[7] This appeal concerns the price announcement scheme for Class II milk.

The uniform price for Class II milk in any given month is the so-called Minnesota-Wisconsin (M-W) price for that month plus ten cents per hundred weight.[8] The price is announced on the 5th day of each month and applies to producer milk delivered to handlers during the *preceding* month.[9] Appellants object to this retroactive notice provision for Class II milk.

#### 1. *The 1970–1974 Rulemaking Proceedings*

##### (a) *Docket No. AO 361–A3, et al.*

On 1 July 1970 the Department published notice of a rulemaking proceeding (Docket No. AO 361–A3, *et al.*) to consider proposed amendments to seven marketing orders regulating milk handling in the Chicago regional and other marketing areas.[10] On request of two dairy associations, advance notice or advanced pricing of Class II and Class III milk was designated as one of many hearing issues.[11] A substantial

---

1. 7 U.S.C. § 601 *et seq.* (1976).

2. 7 C.F.R. § 1000 *et seq.* (1979).

3. 7 U.S.C. § 608c(15)(A).

4. 7 C.F.R. § 900.50–.64 (1979).

5. *See id.* § 900.65–.71; 38 Fed.Reg. 10,795 (1973); 37 Fed.Reg. 28,475 (1972).

6. 7 U.S.C. § 608c(15)(B).

7. *See, e. g.*, 7 C.F.R. § 1030.40 (1979).

8. *Babcock Dairy Co.*, AMA Docket No. M MM–3 (decision by Administrative Law Judge 20 Jan. 1976) [hereinafter cited as ALJ Decision], *reprinted in* Joint Appendix (J.A.) at 52, 92 n. 7; *see, e. g.*, 7 C.F.R. § 1030.50 (1979).

9. *E. g.*, 7 C.F.R. § 1030.53 (1979).

10. 35 Fed.Reg. 10,692 (1970).

11. *Id.* at 10,694:
    *Proposal No. 28.* Provide in each order for the announcement of Class II or Class III prices (if three classes are to be established) in advance of the date on which they become effective.

amount of evidence was taken in support of the proposal.[12] On 11 June 1971 the Department published a Notice of Recommended Decision and Opportunity To File Written Exceptions in connection with the rulemaking proceeding.[13] The deputy administrator found in the recommended decision that the advanced notice proposal "should not be adopted." [14] The decision noted the claims of handlers that the retroactive procedure disadvantaged them by preventing them from knowing the cost of producer milk until after the end of the month in which the milk was processed. The decision observed that the principal milk cooperatives opposed advance notice for Class III milk. It found that because of peculiarities in the Class III milk market that "the prices paid by regulated handlers for Class III milk should correspond very closely with the pay prices for manufacturing grade milk if these handlers are to be competitive in the sale of the principal surplus products. Basing the Class III price for a particular month on the prices paid for manufacturing grade milk in the preceding month would not result in the price coordination necessary for those regulated handlers heavily engaged in the production of cheddar cheese, non-fat dry milk, or butter." [15]

Thus the advance notice provision was rejected for Class III milk *to protect handlers*, the very parties who claimed to be disadvantaged by the existing retroactive provision. The decision found that "[t]he same considerations are involved in the case of an advance announcement of prices for milk used in the proposed Class II products." It concluded, therefore, that "the prices for Class II milk should be announced on the same basis as the prices for Class III milk." [16]

Following the recommended decision, exceptions were filed to the proposed denial of advanced notice for Class II milk by large numbers of handlers and associations of handlers. Significantly, the record discloses that the *principal producer cooperatives* in the seven marketing areas covered by the orders also took exception to the proposed decision. They wrote that "[t]he principal cooperatives supported at the hearing handlers' proposal to announce order prices for Class II milk at the beginning of the month rather than at the end of the month in which the price applies. It is not necessary for the proposed Class II prices to correspond closely with prices being paid for manufactured grade milk · in the same month." [17] While the *producers opposed* advance notice for Class III milk, they were *in favor of advanced notice for Class II milk.*[18] The recommended decision did not take note of this distinction.[19]

On 14 September 1973 a Notice of Revised Recommended Decision was issued by the Administrator of the Agricultural Marketing Service of the Department.[20] The revised recommended decision failed even to mention the exceptions taken to the recommended decision with respect to advance notice of Class II prices. It simply reproduced word for word the language of the

12. *See* J.A. at 7–9.

13. 36 Fed.Reg. 11,352 (1971).

14. *Id.* at 11,366.

15. *Id.*

16. *Id.*

17. Exceptions to the Recommended Decision on Behalf of Associated Milk Producers, Inc., Dairymen, Inc., and Mid-America Dairymen, Inc., *reprinted in* J.A. at 13.

18. An exception to the revised recommended decision filed by one of the principal cooperatives, Associated Milk Producers, Inc., (AMPI) stated that "AMPI is opposed to advance announcement of Class III prices but does support the announcement of the Class I and II prices and butterfat differential on the fifth of the month to be effective on the first day of the following month." *Reprinted in* J.A. at 17.

19. By making reference to the producers opposition to Class III advance announcement and then stating that "[t]he same considerations are involved" with respect to Class III, the recommended decision erroneously implied that the producers were opposed to Class II announcement. *See* ALJ Decision, *reprinted in* J.A. at 52, 69–70.

20. 38 Fed.Reg. 25,756 (1973).

recommended decision regarding advance notice. Exceptions were filed to the revised recommended decision.

On 4 March 1974 the final decision on the proposals was issued by the Assistant Secretary of Agriculture.[21] The language of the findings respecting advance notice of Class II prices was identical with that of the recommended decision, except the final decision acknowledged that *both* handler and producer groups had urged the adoption of advanced notice for Class II prices. No specific ruling on these exceptions was made nor any further comment or additional basis for denial given.[22]

### (b) *Docket No. AO 366–A8, et al.*

On 8 October 1971 the Department published a notice of a hearing on proposed amendments to thirty-three orders regulating milk handling in thirty-three market areas.[23] Again one of the proposals was to adopt advance notice for Class II and Class III prices. The advance notice proposal was supported by a significant amount of evidence at the hearing.[24] On 16, 19 and 20 September 1972 the Recommended Decision and Opportunity to File Written Exceptions on the Proposed Amendments[25] rejected the advance notice amendment for substantially the same reasons it was rejected in the rulemaking in Docket No. AO 361–A3, *et al.*[26] The exceptions filed by the proponents and handlers argued that a distinction should prevail between the *new* Class II products and the *new* Class III products respecting advance notice, and requested

that the decision be amended to provide for advance notice of Class II prices.[27]

The Revised Recommended Decision and Opportunity To File Written Exceptions[28] published on 11, 12 and 13 September 1973 made no mention of the many exceptions made to the recommended decision as to Class II notice. Exceptions were made to the revised recommended decision by a large number of handlers and by the two principal cooperatives in the areas covered by all the orders.[29] A final decision on the proposed amendments was published on 5, 6 and 7 March 1974.[30] The findings on the advance notice proposal were identical to those in the revised recommended decision and recommended decision, except that the exceptions to the decision were acknowledged. No further mention or disposition of the exceptions was made.[31]

### 2. *The ALJ's Decision*

On 15 July 1974 appellants filed a petition pursuant to 7 U.S.C. § 608c(15)(A) seeking to have the Class II milk notice provision invalidated on substantive and procedural grounds. An Administrative Law Judge ruled on 20 January 1976 that the retroactive notice provisions of the federal milk marketing orders were not in accordance with law because they were not supported by record evidence. The ALJ found that there was substantial evidence in the record to support rejection of advance notice for Class III milk, but that there was *no substantial evidence* in the records to support the Secretary's findings

21.  39 Fed.Reg. 8,202 (1974).

22.  *See* ALJ Decision, *reprinted in* J.A. at 52, 76.

23.  36 Fed.Reg. 19,604 (1971).

24.  *See* J.A. at 23.

25.  37 Fed.Reg. 18,984; 37 Fed.Reg. 19,210; 37 Fed.Reg. 19,482 (1972). Hearings on the proposal were heard in three principal locations, but for legal purposes there was one hearing and one record. *See* ALJ Decision, *reprinted in* J.A. at 52, 78.

26.  *See* ALJ Decision, *reprinted in* J.A. at 52, 81.

27.  *See* J.A. at 25–26.

28.  38 Fed.Reg. 25,024; 38 Fed.Reg. 25,282; 38 Fed.Reg. 25,522 (1973).

29.  *See* J.A. at 27–32. The two principal cooperatives were Associated Milk Producers, Inc., and Land O'Lakes, Inc., whose comments are found at J.A. at 30, 32. *See* ALJ Decision, *reprinted in* J.A. at 52, 83.

30.  39 Fed.Reg. 8,452; 39 Fed.Reg. 8,712; 39 Fed.Reg. 9,012 (1974).

31.  *See* ALJ Decision, *reprinted in* J.A. at 52, 83.

with respect to Class II notice.[32] The ALJ observed that "[a]fter establishing the need to announce Class III prices in a manner different from the manner of announcing Class I prices, the Secretary's findings simply state that the same justification for treatment of price announcements for Class III and Class II milk applies—because they are similar."[33] He observed that this "similarity" was not disclosed by the record "nor is it discoverable."[34] He pointed out that "[t]he findings make no attempt at such explanation. Substantial evidence of record supports a distinction in the timing of the announcement. *No* evidence of record supports the Secretary's conclusion of similarity on the point in issue."[35] Therefore he concluded "that the provisions in the 40 orders providing for delayed price announcement for Class II milk are not supported by substantial evidence of record, the pertinent findings in the Decisions are inadequate or non-existent, and that such defects are contrary to the substantive and procedural requirements of the Act and the Secretary's own regulations."[36] The ALJ declined to order advance notice of prices because he believed he was without power to do so.[37] Both appellants and the Department of Agriculture appealed this decision to the Judicial Officer.

### 3. *The Judicial Officer's Disposition*

On 29 April 1976 the Judicial Officer entered his decision and order on appellants' petition. He concluded that the challenged provision was authorized by statute, was not in violation of the Constitution, and was not arbitrary and capricious or discriminatory in application.[38] However, the Judicial Officer agreed with the ALJ that the retroactive notice provisions of the orders were not in accordance with law because the record evidence and findings of fact did not support the Secretary's decision purporting to continue retroactive notice solely to benefit regulated handlers.[39] The officer declined to offer affirmative relief to the petitioners; rather, he decided to "leave it to the Secretary" to determine whether and if such relief should be granted.[40] He was also of the view that if he were to consider amending the orders to comply with his decision, he would not order advance notice because he could not "infer from [the record] evidence that advance notice would tend to effectuate the declared policy of the Act."[41] He also stated that he would retain jurisdiction and the parties would be able to institute additional proceedings before him if unsatisfied by subsequent Secretary action.[42] Appellants then filed suit on 10 May 1976 for review of the Judicial Officer's decision.

### 4. *The 1976 Rulemaking*

The same day appellants filed in the district court, the Department of Agriculture designated the question of amending the notice of pricing provision in the milk marketing orders as a hearing issue for a new rulemaking proceeding.[43] No specific proposal to adopt retroactive notice was advanced. On 22 September 1976 the Department published a Decision on Proposed Amendments; Order Terminating Proceedings[44] in the *Federal Register*. The decision did not identify any proposal to provide retroactive notice in the orders, nor did it

32. *Id.* at 87–88.

33. *Id.* at 88.

34. *Id.*

35. *Id.* at 89 (emphasis in original).

36. *Id.* at 89–90.

37. *Id.* at 104.

38. *Babcock Dairy Co.*, AMA Docket No. M MM–3 (decision of Judicial Officer 29 Apr. 1976), *reprinted in* J.A. at 107, 125–28.

39. *Id.* at 120.

40. *Id.* at 129.

41. *Id.* at 129–30.

42. *Id.* 131.

43. 41 Fed.Reg. 19,650 (1976).

44. 41 Fed.Reg. 41,427 (1976).

adopt any provision for retroactive notice. The decision stated only that the proceedings were terminated and that the orders should not be amended to include advance notice.[45] The appellants notified the Judicial Officer on 20 October 1976 that they did not intend to file a petition for review of these proceedings with the Judicial Officer in accordance with his 29 April 1976 decision.[46] Accordingly on 23 November 1976 the Judicial Officer issued an order terminating the proceedings.

### 5. *The District Court Decision*

At the district court level cross motions were made for summary judgment, and appellees moved for dismissal. The district court granted the motion to dismiss in part, finding that the doctrines of mootness and exhaustion barred those claims not raising "purely legal questions." It found that such claims regarding the 1976 supplemental rulemaking proceedings were not properly before the court because appellants did not exhaust their administrative remedies with respect thereto.[47] It determined that the 1976 proceedings had supplanted the 1970–1974 proceedings as the basis for retaining the retroactive notice provisions, and thus issues regarding the 1970–1974 proceedings were moot.[48] The court found that it did have jurisdiction to decide appellants' claims presenting questions of law and concluded that retroactive notice "is authorized by and not in conflict with the statute and that it is not violative of" any constitutional and administrative law principles against retroactive application of government regulation.[49]

## II. MERITS

### A. *Mootness*

■ The district court was of the view that the 1976 rulemaking provided an inde-

pendent basis for the inclusion of retroactive notice provisions in the milk marketing orders. Thus, it believed that whether the 1970–1974 proceedings provided a sufficient basis for the notice provision was a purely academic question.[50]

We believe that the 1976 supplemental rulemaking in form and in substance did not constitute an independent basis for inclusion of retroactive notice in the various orders and therefore did not moot appellants' challenge to the validity of the provision. In its 1976 decision the Department found that its new record did "not support the advance announcement of Class II prices."[51] Therefore, the Department concluded that "[t]he orders *should not be amended* to change the procedure for announcing the Class II milk prices."[52] Rather than purport to adopt or readopt retroactive notice, the decision simply rejected certain advance notice proposals and *left in effect the retroactive notice provision which had already been declared invalid.* Because it did not reconsider and readopt retroactive notice, the 1976 rulemaking merely added zero to zero, resulting in zero as far as a valid milk pricing proposal is concerned. In its form, the decision might be *res judicata* as to the propriety of adopting the particular advance notice proposals before the Department based on the 1976 record, but the decision on its face does not constitute an independent basis for inclusion of retroactive notice provisions in the milk orders, nor does it moot the question of the validity of their adoption in the 1970–1974 proceedings.

Nor do we think the Department's refusal to amend the existing notice provision constituted *in substance* an adoption or readoption of retroactive notice. The Department made findings that the particular advance pricing proposals in some circum-

---

45. *Id.* at 41,428; 41,431.

46. J.A. at 197–99.

47. *American Dairy, Inc. v. Butz*, No. 76–0806, slip op. at 10–16 (D.D.C. 29 May 1977), *reprinted in* J.A. at 210–16.

48. *Id.* at 216–18.

49. *Id.* at 219–29.

50. *Id.* at 210, 216–18.

51. 41 Fed.Reg. 41,431 (1976).

52. *Id.* at 41,428 (emphasis added).

stances "could not be concluded to be in furtherance of the expressed purposes of the Act." [53]  At no point did the Department find that *retroactive* notice would *effectuate* the policies of the Act. In the absence of such an affirmative finding, the decision did not and could not in substance constitute an adoption of retroactive notice under the guise of rejection of advance notice. Again, by simply rejecting the amendments to the prior, invalid order, the Secretary added zero to zero, and comes up with zero.

Because the 1976 supplemental rulemaking did not constitute an independent basis for retroactive notice, [54] we hold that the district court erred in ruling that appellants' challenges to the 1970–1974 proceedings were moot.

B. *Exhaustion of Administrative Remedies*

■ Nor are appellants barred from challenging the validity of retroactive notice in the milk orders by failure to exhaust administrative remedies. We think that by seeking and obtaining a ruling by the Judicial Officer on the retroactive notice question, appellants complied with the requirements of the Act and exhausted their statutorily required administrative remedy.

The dissent suggests that because the Judicial Officer's decision in 1976 was in the nature of a remand it was a nonfinal order obligating appellants to continue participating in the new Department rulemaking and subsequent review by the Judicial Officer before seeking review by the district court. He submits that appellants' failure to do so is not excusable because exhaustion is required by statute.

We agree that exhaustion of certain administrative remedies is required by the Act. We also believe that appellants have exhausted these statutorily required remedies. 7 U.S.C. § 608c(15)(A) provides that handlers may file written petitions with the Secretary of Agriculture to review marketing orders. The handlers are to be "given an opportunity for a hearing upon such petition," and "[a]fter such hearing, the Secretary shall make a ruling upon the prayer of such petition which shall be final, if in accordance with law." [55]  The statute grants jurisdiction to the district court "to review such ruling." [56]  Appellants have sought review by the Judicial Officer, and a ruling has been made on their petition. That is all that the Act requires for them to seek review by the district court.

■ We do not believe that the 1976 rulemaking justifies our imposition of any further exhaustion requirement antecedent to judicial review of promulgation of retroactive notice. As previously mentioned, the 1976 rulemaking did not purport in form or substance to adopt retroactive notice; it merely rejected certain advance notice proposals. Because the rulemaking did not add anything to the validity of the department's promulgation of the challenged provision, we do not think it necessary to require that appellants pursue further administrative avenues prior to seeking review of the provision in the district court in this case. The Judicial Officer had already declared the retroactive notice provision not in accordance with law. As to that holding, the 1976 rulemaking purported to do absolutely nothing; adding zero to zero, it does not justify a further exhaustion requirement. [57]

53. 41 Fed.Reg. 41,430 (1976).

54. The district court rejected appellants' arguments that the 1976 rulemaking was a nullity, believing that the validity of the proceeding was not reviewable because appellants failed to seek review by the Judicial Officer. Our conclusion that the 1976 rulemaking did not moot the 1970–1974 proceeding does not rest on the 1976 proceeding's claimed invalidity; assuming the rulemaking to be valid, we think it simply did not purport to repromulgate retroactive no-

tice and hence does not moot our consideration of the provision's original adoption.

55. 7 U.S.C. § 608c(15)(A) (1976).

56. *Id.* § 608c(15)(B).

57. Whether a "corrective" rulemaking would ever justify judicial imposition of a requirement that handlers pursue further administrative remedies after the Judicial Officer has made a ruling on their petition is a question we do not

Because appellants have exhausted their statutorily required remedies, and because the 1976 rulemaking does not justify imposition of any further exhaustion requirement, we conclude that their challenges to retroactive notice are not barred for failure to exhaust administrative remedies.

C. *Finality*

■ Further, we do not believe that the Judicial Officer's 1976 order was nonfinal because he retained jurisdiction to allow "whatever corrective action" the Secretary desired to take.[58] The order arguably is analogous to a remand, and in certain cases remands have been held to be nonfinal for purposes of appellate or judicial review.[59] However, simply labeling the challenged order a remand does not end our inquiry into its finality.[60]

■ In determining whether an order is sufficiently final for purposes of judicial review, "the relevant considerations . . . are whether the process of administrative decisionmaking has reached a stage where judicial review will not disrupt the orderly process of adjudication and whether rights or obligations have been determined or legal consequences will flow from the agency action." [61] In view of these considerations and the statute outlining required administrative procedures to review marketing orders, we think the Judicial Officer's order is final for purposes of judicial review.

The Judicial Officer's 1976 order denied appellants' request that advance notice be ordered and the invalidly adopted retroactive notice provision be terminated. We think that such a decision determined obligations of the handlers, and legal consequences certainly flowed from the action. ·

■ We also believe that judicial review of the order presents little danger of appreciable disruption of agency proceeding.[62] In so deciding, we note that the requirements of finality and exhaustion are inextricably intertwined. Both are designed to avoid premature disruption of

decide. If the Department had adopted retroactive notice in its 1976 rulemaking, it might be wise for us to require handlers to obtain review by the Judicial Officer before filing in the district court. (Of course, if that had occurred, then the challenges to the original proceeding could have been correctly disposed of on mootness grounds, without need to determine whether the 1976 rulemaking triggered a further exhaustion requirement antecedent to judicial review of the 1970–1974 proceeding.) On the other hand, a holding that the Judicial Officer's remitting handlers to a new rulemaking precluded them from seeking judicial review could create a danger of the Department's indefinitely avoiding judicial review by an endless series of remands. In view of our conclusion that the 1976 rulemaking did not create any further obligation to exhaust, we leave open the question whether the court should ever require handlers to pursue remedies beyond those statutorily required.

58. · *Babcock Dairy Co.*, AMA Docket No. M MM–3 (decision of Judicial Officer 29 Apr. 1976), *reprinted in* J.A. at 107, 131.

59. *Fieldcrest Mills, Inc. v. OSHA*, 545 F.2d 1384 (4th Cir. 1976) (OSHA Review Commission decision reversing ALJ's summary judgment and remanding for trial on the merits was not a final order because it was not one "affirming, modifying or vacating the Secretary's citation or proposed penalty, or directing other appropriate relief" as required for finality by 29 U.S.C. § 659(c) ); *Sun Shipbuilding & Dry Dock Co. v. Benefits Review Bd.*, 535 F.2d 758 (3d Cir. 1976) (Benefit Review Board's decision affirming ALJ's determination of liability but remanding for redetermination of damages was a nonfinal order); *see Barfield v. Weinberger*, 485 F.2d 696 (5th Cir. 1973); *Pauls v. Secretary of Air Force*, 457 F.2d 294 (1st Cir. 1972) (both *Barfield* and *Pauls* find district court remands to agency to be nonfinal decisions within the meaning of 28 U.S.C. § 1291).

60. *Cf. Fidelity Television, Inc. v. FCC*, 502 F.2d 443, 448 (D.C.Cir.1974) (agency characterization of decision not determinative of finality issue).

61. *Port of Boston Marine Terminal Ass'n v. Rederiaktiebolaget Transatlantic*, 400 U.S. 62, 71, 91 S.Ct. 203, 209, 27 L.Ed.2d 203 (1970).

62. Although the determination whether judicial review will disrupt agency proceedings should focus on the state of the proceedings at the time the relevant order was entered, we note that our reviewing the Judicial Officer's decision presents no such danger of disruption today. The Judicial Officer entered his order terminating the proceeding on 23 November 1976, and there are no further proceedings currently pending before the Department to review the 1970–1974 adoption of retroactive notice.

agency proceedings.[63] In determining at what point judicial review will not unduly intrude on the administrative process, the relevant statute outlining the required administrative procedures must be examined. The Agricultural Marketing Agreement Act provides an exclusive administrative remedy which must be followed prior to obtaining judicial review. We think that once the prescribed procedure has been followed, the exhaustion mandate should be regarded as met, and the resulting decision as sufficiently final for purposes of review by the courts.

Since we have already concluded that appellants have complied with the exhaustion mandate of the Act, it follows that the Judicial Officer's order is final for purposes of review, even though it is in the nature of a remand. Our conclusion is strengthened by the language in the Act stating that the Judicial Officer's ruling "shall be final, if in accordance with law," and that such rulings are reviewable by the district court.[64] We believe that the statute contemplates that once review has been made by the Judicial Officer, the danger of appreciable obstruction of administrative proceedings is minimized and that such orders "shall be final" for purposes of review.

## III. RELIEF

The court has before it an order by the Judicial Officer finding that retroactive notice was not validly adopted in the 1970–1974 proceeding, and retaining jurisdiction pending whatever corrective action the Secretary might take. The subsequent 1976 rulemaking, in our view, was a nullity, since it did not purport affirmatively to promulgate a retroactive notice provision based on any evidence whatsoever. Therefore, we are faced with a milk marketing provision that has never been validly adopted, and has been declared invalid and of no effect. With that in mind, we believe the following relief[65] is appropriate:

(1) The case should be remanded to the Department for adoption of a new notice provision based on the 1970–1974 or 1976 records, or for an entirely new hearing on the pricing formula and notice provision for Class II milk, at the Secretary's discretion.

(2) The retroactive notice provision in the Class II milk marketing orders should be vacated as not in accordance with law, and the Secretary should be directed in the interim to use the same notice provision used for Class I milk, i. e., advance notice, until a Class II notice provision is adopted after the appropriate hearing and/or findings.

Appellants submit that there is sufficient evidence on the record to justify advance pricing for Class I milk. In view of our disposition of this appeal, we do not believe it propitious to decide the issue at this time.[66] While the Judicial Officer indicated

**63.** *McKart v. United States*, 395 U.S. 185, 193–94, 89 S.Ct. 1657, 1662–1663, 23 L.Ed.2d 194 (1969):

The reasons for making such procedures exclusive, and for the judicial application of the exhaustion doctrine in cases where the statutory requirement of exclusivity is not so explicit, are not difficult to understand. A primary purpose is, of course, the avoidance of premature interruption of the administrative process. The agency, like a trial court, is created for the purpose of applying a statute in the first instance. Accordingly, it is normally desirable to let the agency develop the necessary factual background upon which decisions should be based. And since agency decisions are frequently of a discretionary nature or frequently require expertise, the agency should be given the first chance to exercise that discretion or to apply that expertise. And of course it is generally more efficient for the administrative process to go forward without interruption than it is to permit the parties to seek aid from the courts at various intermediate stages. The very same reasons lie behind judicial rules sharply limiting interlocutory appeals.

**64.** 7 U.S.C. § 608c(15)(A)–(B) (1976).

**65.** 7 U.S.C. § 608c(15)(B) (1976) authorizes the reviewing court to "remand such proceedings to the Secretary with directions either (1) to make such ruling as the court shall determine to be in accordance with law, or (2) to take such further proceedings as, in its opinion, the law requires."

**66.** Similarly we do not decide whether the provision is authorized by the statute, nor whether it is violative of any constitutional or administrative law principles regarding retroactive application of government regulation.

that he did not believe that evidence in the 1970–1974 proceedings warranted a finding that Class II advance notice would "tend to effectuate the policy" of the Act, that statement was merely dictum. Because he left it to the Secretary to take corrective action, his comment was wholly gratuitous and is in no way binding on the court or on the Department on remand. Having concluded that the notice provision is invalid, we leave it to the Secretary to issue a new notice provision supportable on the record.[67]

We also believe that the challenged provision should not be enforced in the interim. All parties agree that the initial adoption of retroactive notice was invalid, and the provision has never been readopted. Because the provision is clearly invalid, we think it should be deleted from the marketing orders. Since milk must be priced and notice given pending issuance of new regulations by the Secretary we think the Class I notice procedure should be used in the meantime. In another rulemaking, the Secretary found, and that finding is unchallenged, that prospective notice effectuates the policy of the Act with respect to Class I milk.[68] Class I includes most milk. Because of certain peculiarities in the marketing of Class III milk, the Secretary made an unchallenged finding that retroactive notice should be used for that class. Having made that valid finding with respect to Class III, the Secretary attempted to impose retroactive notice on Class II milk simply by analogy. The ALJ and the Judicial Officer made determinations that the Secretary has not shown that the two classes are so similar that the notice provisions must be identical.

Since most milk is subject to prospective notice, and since the Secretary's rationale

for treating Class II milk differently than Class I as to timing of notice is invalid, we think it most appropriate that Class I notice be used for Class II until the Secretary promulgates new notice provisions. In ordering such interim relief, we do not intimate any view as to what type of notice provision the Secretary must issue on remand. We simply hold that the existing provision is invalid, and until a new provision is adopted Class I type notice must be utilized.

This proceeding was initiated by a notice on 1 July 1970. In almost a decade this administrative agency has failed to produce a decision sustainable on an adequate record. While recognizing that the ultimate answer on the merits of milk pricing rests with the Secretary, the aggregate record of this decade-long administrative morass is equivalent to administrative action unlawfully withheld. The courts have power to compel administrative action in such circumstances;[69] by granting the private parties here the relief they have sought for years, although on an interim basis, we expect proper and prompt administrative action on a sound record to result.

For these reasons, the judgment of the district court is reversed and the case is remanded for further proceedings consistent with this opinion.

SPOTTSWOOD W. ROBINSON, III, Circuit Judge, dissenting:

The court today ignores a significant body of administrative law when it awards relief to appellants even temporarily, and equally so when it orders the Secretary of

---

**67.** If the Secretary is of the view that either the 1970–1974 or 1976 records justifies findings that a particular notice procedure effectuates the policy of the Act, he may make a decision on that basis. Such decision, of course, will be subject to review by agency procedures, and eventually by the courts. If the Secretary believes that neither record warrants a finding that any particular kind of notice effectuates the policy of the Act, he may initiate a new rulemaking. The conclusion that a new hearing is necessary will also be subject to adminis-

trative and judicial review. This will allow future reviewing entities to determine if granting a new hearing constituted giving some sort of illegitimate "second bite of the apple" to the Department to prove its case. See American Dairy v. Butz, No. 76–0806, slip op. at 13 n.32 (D.D.C. 29 May 1977), reprinted in J.A. at 213 n.32.

**68.** 37 Fed.Reg. 1388 (1972).

**69.** See 5 U.S.C. § 706(1) (1976).

Agriculture to switch from retroactive to advance announcement [1] of minimum prices for class II milk while he proceeds to ascertain whether this judicially-imposed methodology can legally be justified. From that disposition I must respectfully dissent.

I readily agree that the Secretary needs to definitively determine just what type of notice—advance or retroactive—of class II minimum milk prices will effectuate the purposes of the Act.[2] But that might well have been accomplished had appellants not chosen to boycott the expedited procedure which the judicial officer mapped out for a suitable evaluation of opposing presentations on that score. Thus I would affirm the District Court on the ground that appellants failed to fully exhaust their administrative remedies and turned prematurely to the courts. Moreover, I see no basis for compelling the Secretary to institute advance-price announcing for class II milk while he moves toward a resolution of the notice question. In my view, the Secretary should be left free to exercise, at least in the first instance, his regulatory discretion on whether to maintain or change the status quo during this interval.

1. Though this terminology is not fully accurate, see note 7 *infra*, I follow the litigants and the court in using it.

2. Agricultural Marketing Agreement Act of 1937, as amended, 7 U.S.C. §§ 601 *et seq.* (1976) [hereinafter cited as codified].

3. For the definition of "handler," see 7 U.S.C. § 608c(1) (1976); 7 C.F.R. § 1126.9 (1979).

4. The hearing notices may be found at 35 Fed. Reg. 10692 (1970) and 36 Fed.Reg. 19604 (1971). Until issuance of the 1974 orders attacked herein, federal marketing orders usually recognized only two classes of milk, but many now specify three. For an explanation of the purposes of classification, see *Schepps Dairy, Inc. v. Bergland*, 202 U.S.App.D.C. ——, 628 F.2d 11 (1979), text at notes 8–23. Under the tripartite scheme, that destined for fluid consumption, and commanding the highest price, is class I milk, and all other—that is, milk used in manufacturing dairy products—is class II and III milk. Milk used in manufacture of "soft" products such as ice cream and yogurt is class II, and milk used in manufacture of "hard" products such as cheese and butter is

## I. BACKGROUND

As the court's opinion makes apparent, the background of this litigation is extensive and complicated. I pause, then, to summarize so much as is relevant to the discussion to follow.

During 1970–71, the Secretary of Agriculture conducted rulemaking proceedings involving, among other things, proposals by milk processors—"handlers," in the lexicon of the Act[3]—for advance rather than retroactive announcement of the minimum prices that handlers must pay producers for milk.[4] Regulated prices vary from class to class, but are always a function of the price paid for milk from the unregulated and most efficient milk-producing regions of Minnesota and Wisconsin—the "M-W price." [5] Even prior to the Act, milk was classified into two categories according to the uses to which handlers put it,[6] and with the advent of federal regulation it became the practice to announce on the fifth of each month minimum prices for milk in class I that was to be delivered during that month, and for milk in class II that had already been delivered during the preceding month. This methodology, somewhat inaccurately denominated "advance" and "ret-

class III. The separation of manufacturing milk into two categories enables producers to gain additional income reflective of the higher market value of class II products. See note 5 *infra*.

5. For example, in the orders under review the minimum price for class II milk in any month is the M-W price for that month plus ten cents per hundredweight. See, e. g., 39 Fed.Reg. 8722 (1974). Unregulated milk from Minnesota and Wisconsin competes with class III milk on a national basis, so the class III price is the M-W price. "The Minnesota-Wisconsin price is the estimate made each month by the Department's Statistical Reporting Service, based on a survey of representative plants, of the price paid by handlers in the two States for manufacturing milk." *Babcock Dairy Co.*, AMA No. M MM–3 (Apr. 29, 1976), at 2, Joint Appendix (J.App.) 108 (judicial officer's decision).

6. See *Schepps Dairy v. Bergland, supra* note 4, text at notes 11–12.

roactive" pricing,[7] continued for nearly four decades after inception of the Act.

Since the early 1970's many federal milk-marketing orders classify milk into three categories, though some follow the older model.[8] In 1972, the Department of Agriculture amended its ongoing milk-marketing orders to provide for announcement on the fifth of the month of the minimum price to be paid for class I or fluid milk to become effective for the following month.[9] This modification improved the handlers' ability to respond to class I price fluctuations, and it remains in force today. In March 1974, however, the Department made known its decision to adhere to its traditional retroactive method in announcing minimum prices for class II and III milk—surplus milk destined for manufacture of dairy products.[10]

In July 1974, the handlers filed an administrative petition seeking invalidation, on both procedural and substantive grounds, of retroactive price-notification with respect to class II milk.[11] In January, 1976, an administrative law judge rejected appellants' contentions that the Secretary is constitutionally and statutorily foreclosed from announcing minimum prices for milk after it has been delivered, processed and resold.[12] The judge found that the decision to retain retroactive notice of minimum class III milk prices was vindicated by the evidence [13] but held that insufficient evidence of record supported retroactive announcement of class II prices.[14] The judge declined to direct provision of advance notice, however, concluding that the Secretary has ample statutory authority to require retroactive notice upon compilation of an adequate supporting record.[15]

Appellants then brought the matter before the Department's judicial officer, to

---

7. As the District Court observed,

   [t]he formula by which the price handlers must pay for milk used to produce Class II products is to be computed is known in advance, as is the time at which this price will be announced. The "retroactivity" involved here is that the computation and announcement of the prices according to this formula is made after the month for which the prices were in effect. The advance notice which [appellants] seek is not advance notice of the pricing formula or scheme to which they are subject, which is already afforded them under the present orders, but of the precise price which they must pay under this scheme.

   *American Dairy v. Butz*, Civ. No. 76–806 (D.D.C. May 29, 1977), at 20–21, J.App. 220–221.

8. See note 4 *supra.*

9. 37 Fed.Reg. 1388–1389 (1972).

10. 39 Fed.Reg. 8202, 8452, 8712, 9012 (1974). The essence of the underlying rationale was that there is a general consensus that class III regulated pricing should correspond to M-W unregulated pricing in order to preserve competitive conditions, and that similar considerations are involved in class II pricing.

11. The handlers proceeded pursuant to 7 U.S.C. § 608c(15)(A) (1976), which states:

    Any handler subject to an order may file a written petition with the Secretary of Agriculture, stating that any such order or any provision of any such order or any obligation imposed in connection therewith is not in accordance with law and praying for a modification thereof or to be exempted therefrom. He shall thereupon be given an opportunity for a hearing upon such petition, in accordance with regulations made by the Secretary of Agriculture, with the approval of the President. After such hearing, the Secretary shall make a ruling upon the prayer of such petition which shall be final, if in accordance with law.

12. *Babcock Dairy Co.*, AMA No. M MM–3 (Jan. 20, 1976) (administrative law judge's decision), at 45–52, J.App. 96–103.

13. *Id.* at 37, J.App. 88. Appellants do not contest this holding.

14. *Id.* at 36–41, J.App. 87–92. The ground for this determination was that all of the record evidence supporting retroactive notice dealt with class III milk, and that the supposed similarity of class II and III milk for announcement purposes was unproven. On the substantial evidence standard in this context, see *Fairmont Foods Co. v. Hardin*, 143 U.S.App.D.C. 40, 45, 442 F.2d 762, 767 (1971); *Lewes Dairy, Inc. v. Freeman*, 401 F.2d 308, 315–316 (3d Cir. 1968), cert. denied, 394 U.S. 929, 89 S.Ct. 1187, 22 L.Ed.2d 455 (1969); *Borden, Inc. v. Butz*, 544 F.2d 312, 316 (7th Cir. 1976); *Jones v. Bergland*, 456 F.Supp. 635, 645–646 (E.D.Pa.1978).

15. *Babcock Dairy Co., supra* note 12, at 52, J.App. 103.

whom the Secretary has delegated final decisional authority.[16]  In April, 1976, the judicial officer issued his decision, rebuffing appellants' statutory and constitutional arguments but sustaining their contention that the retroactive-notification provision for minimum class II milk prices was not supported by sufficient evidence in the rulemaking record.[17]  For two principal reasons, however, the judicial officer did not order advance announcement of class II prices. In the first place, he thought it best to leave rulemaking to those to whom the Secretary has delegated that function, in accordance with traditional practice in the Department.[18]  Secondly, he felt that the evidence was also insufficient to warrant a finding that advance notice of class II prices would "tend to effectuate the declared policy" of the Act, a finding statutorily prerequisite to an order calling for advance notice.[19]  In his view, the record did not reflect adequate consideration of the "consequences of advance notice on producers, unregulated handlers and consumers, or the effect that advance notice would have on orderly marketing conditions." [20]  Therefore, he held, corrective action should properly be undertaken in additional rulemaking

by the Secretary.[21]  Sensitive to the delays already encountered by appellants in their effort to secure advance-price notification for class II milk, the judicial officer mapped out an expedited procedure that appellants could utilize in the event that any subsequent decision by the Department on the notice question failed to satisfy them.[22]

Responsively to the judicial officer's decision, the Department, in May, 1976, designated for hearing the question whether to amend existent milk-marketing orders to provide for some form of advance announcement of class II milk prices.[23]  That same day, appellants filed the instant action in the District Court for review of the continuing practice of providing notice only retroactively of the minimum prices that handlers must pay producers for that class of milk.[24]  The supplemental rulemaking hearing, at which counsel for appellants appeared, was held in early June; and in September the Secretary's rulemaking delegates, upon review of the hearing record, again declined to adopt the proposal for advance notice of class II milk prices, and instead retained retroactive notice of prices for milk in that category.[25]  No administrative review of this action has ever been

16. 37 Fed.Reg. 28475 (1972); 38 Fed.Reg. 10795 (1973). The administrative review procedure is described in 7 C.F.R. §§ 900.65–900.-66 (1979).

17. *Babcock Dairy Co., supra* note 5, at 10–22, J.App. 116–128. The judicial officer noted that the stated rationale behind the determination to continue retroactive notice for class II milk—to keep regulated handlers competitive with those unregulated, see decisions cited *supra* note 10 —was not inherently plausible and overlooked the regulated handlers' consistent testimony in favor of advance notice. *Id.* at 11–14, J.App. 117–120.

18. *Id.* at 23, J.App. 129. The judicial officer cited an article by his predecessor explaining that practice. Flavin, *The Functions of the Judicial Officer, United States Department of Agriculture*, 26 Geo.Wash.L.Rev. 277, 278 n.9 (1958).

19. *Babcock Dairy Co., supra* note 5, at 23–24, J.App. 129–130, quoting 7 U.S.C. § 608c(4) (1976).

20. *Babcock Dairy Co., supra* note 5, at 24, J.App. 130.

21. *Id.* at 24, J.App. 130.

22. Appellants, he said, should file a brief with him within 25 days after service of that decision. The Department's representative would be given 25 days within which to submit an answering brief, and appellants would have 10 days to reply. If oral argument were requested, it would be held within 10 days after the final brief was filed, and the judicial officer would issue a final decision and order within 15 days after argument. *Id.* at 24–25, J.App. 130–131.

23. 41 Fed.Reg. 19650 (1976).

24. *American Dairy v. Butz, supra* note 7.

25. 41 Fed.Reg. 41427 (1976). This decision, unlike the earlier ones, see note 10 *supra*, was not based upon any asserted need to protect regulated handlers, but on concern with producer interests and orderly marketing conditions.

sought; rather, appellants notified the judicial officer in October that they did not intend to accept his invitation to an examination of the supplemental decision.[26]

The case was submitted to the District Court on cross-motions for summary judgment and on the Secretary's motion to dismiss. In a memorandum opinion, the District Court made four principal rulings. On the ground that the 1971–72 record had been supplanted by the one developed at the 1976 hearing, the court dismissed as moot appellants' claim that the 1974 decision lacked a rational basis.[27] The court further dismissed, for refusal to pursue administrative remedies, all of appellants' complaints with respect to the 1976 hearing and supplemental decision.[28] The court also rejected appellants' argument that the judicial officer, having found retroactive announcement of minimum class II milk prices unsupported by substantial record evidence, was legally required to order advance announcement without further ado.[29] The court then reached and overruled appellants' contentions that retroactive price-notification contravenes the Act, deprives them of due process and violates legal principles proscribing retroactive application of significant governmental regulations.[30]

In this court, appellants renew their substantive positions and assail the District Court's determinations. Though I do not subscribe to all of the District Court's reasoning, I firmly believe it reached the right result.

## II. EXHAUSTION AND SECTION 8c(15)

Appellants' decision to forego the opportunity for a ruling by the judicial officer on the validity of the order emanating from the 1976 supplemental rulemaking proceeding leads me first to explore the propriety of considering their objections. My colleagues say that step was unnecessary.[31] A survey of current law convinces me that although the doctrine of exhaustion of administrative remedies is not monolithic,[32] this bypass should be fatal to appellants' attempt to secure judicial review.

The District Court assessed appellants' omission in this regard from the perspective of the familiar judge-made requirement of exhaustion.[33] Since, however, the need for exhaustion must always be assessed with due regard for the statute involved,[34] I begin by addressing the possibility that here exhaustion was a statutorily-mandated prerequisite to any judicial examination of appellants' claims. My view of the congressional scheme leads me to conclude that it demanded utilization of the administrative remedy further available to appellants—application to the judicial officer for a decision on the 1976 order—prior to resort to the courts, and that the District Court thus had no jurisdiction to entertain their lawsuit. And while this alone is ground enough to dispose of the present appeal, I agree with the District Court that in any event appellants did not advance a sufficiently persuasive case to warrant an exercise in their favor of the discretion the court would otherwise have had to relax the exhaustion requirement.

---

**26.** Letter from Robert N. Sayler, Counsel for Appellants, to Donald A. Campbell, Judicial Officer (Oct. 20, 1976), J.App. 197.

**27.** *American Dairy v. Butz, supra* note 7, at 10, J.App. 210.

**28.** *Id.* at 10–11, J.App. 210–211.

**29.** *Id.* at 11–14, J.App. 211–214. The court noted particularly that to require the judicial officer to order advance announcement would result in "a provision which is not supported by the evidence and, hence[,] not in accordance with law." *Id.* at 14, J.App. 214.

**30.** *Id.* at 22–29, J.App. 222–229.

**31.** Majority Opinion (Maj.Op.) pt. II(B).

**32.** See cases cited *infra* notes 34–38.

**33.** See *American Dairy v. Butz, supra* note 7, at 15 n. 34, J.App. 215.

**34.** *Weinberger v. Salfi*, 422 U.S. 749, 765, 95 S.Ct. 2457, 2466–2467, 45 L.Ed.2d 522, 538–539 (1975); *Parisi v. Davidson*, 405 U.S. 34, 37, 92 S.Ct. 815, 817–818, 31 L.Ed.2d 17, 25 (1972); *McKart v. United States*, 395 U.S. 185, 193, 89 S.Ct. 1657, 1662, 23 L.Ed.2d 194, 203 (1969); *United States v. Ruzicka*, 329 U.S. 287, 295, 67 S.Ct. 207, 211, 91 L.Ed. 290, 296 (1946).

## A. *Mandatory Exhaustion of Remedies*

It has long been recognized that "Congress, acting within its constitutional powers, may prescribe the procedures and conditions under which, and the courts in which, judicial review of administrative orders may be had." [35] When Congress chooses to exact exhaustion of administrative remedies as a jurisdictional prerequisite, courts and parties are firmly bound thereby.[36] While exhaustion requirements, even though judicially developed, "must be applied in each case with an 'understanding of its purposes and of the particular administrative scheme involved,' " [37] application of those judicially developed lies ultimately within the sound discretion of the court.[38] But Congress may, by mandating the procedures to be followed, effectively preclude judicial action when the legislative specifications have been ignored.[39]

That, I think, is what Congress has done here. We deal with legislation by which Congress established a particular, comprehensive scheme for administrative consideration and subsequent judicial review of handlers' objections to milk marketing orders. Section 8c(15)(A) of the Act authorizes any affected handler to present administratively · a petition "stating that any such order or any provision of any such order or any obligation imposed in connection therewith is not in accordance with law and praying for a modification thereof or to be exempted therefrom." [40] The handler is entitled to a hearing on his petition [41] and "[a]fter such hearing," the section directs, "the Secretary shall make a ruling upon the prayer of such petition which shall be final, if in accordance with law." [42] Section 8c(15)(B) confers jurisdiction on the district courts to review the Secretary's ruling and to set it aside if it "is not in accordance with law." [43]

**35.** *City of Tacoma v. Taxpayers of Tacoma*, 357 U.S. 320, 336, 78 S.Ct. 1209, 1218–1219, 2 L.Ed.2d 1345, 1354–1355 (1958). See also *Labor Bd. v. Cheney Cal. Lumber Co.*, 327 U.S. 385, 388, 66 S.Ct. 553, 554, 90 L.Ed. 739, 741 (1946); *Lockerty v. Phillips*, 319 U.S. 182, 187, 63 S.Ct. 1019, 1022, 87 L.Ed. 1339, 1342–1343 (1943); *Cary v. Curtis*, 44 U.S. (3 How.) 236, 245, 11 L.Ed. 576, 581 (1845).

**36.** *Mathews v. Diaz*, 426 U.S. 67, 76, 96 S.Ct. 1883, 1889–1890, 48 L.Ed.2d 478, 487–488 (1976); *Mathews v. Eldridge*, 424 U.S. 319, 328, 96 S.Ct. 893, 899, 47 L.Ed.2d 18, 29 (1976); *Weinberger v. Salfi, supra* note 34, 422 U.S. at 766, 95 S.Ct. at 2467, 45 L.Ed.2d at 539; *Whitney Nat'l Bank v. Bank of New Orleans*, 379 U.S. 411, 420, 85 S.Ct. 551, 557, 13 L.Ed.2d 386, 394 (1965); *United States v. Ruzicka, supra* note 34, 329 U.S. at 292, 67 S.Ct. at 209, 91 L.Ed. at 294; *Texas & P. Ry. v. Abilene Cotton Co.*, 204 U.S. 426, 27 S.Ct. 350, 51 L.Ed. 553 (1907); *Humana of South Carolina, Inc. v. Califano*, 191 U.S.App.D.C. 368, 376, 590 F.2d 1070, 1078 (1978); *United States v. Southern Ry.*, 364 F.2d 86 (5th Cir. 1966), *cert. denied*, 386 U.S. 1031, 87 S.Ct. 1479, 18 L.Ed.2d 592 (1967); *Fillinger v. Cleveland Soc'y for the Blind*, 591 F.2d 378, 379 (6th Cir. 1979); *Montgomery v. Rumsfeld*, 572 F.2d 250 (9th Cir. 1978).

**37.** *Parisi v. Davidson, supra* note 34, 405 U.S. at 37, 92 S.Ct. at 817–818, 31 L.Ed.2d at 25, quoting *McKart v. United States, supra* note 34, 395 U.S. at 193, 89 S.Ct. at 1662, 23 L.Ed.2d at 203.

**38.** *NLRB v. Industrial Union of Marine & Shipbldg. Workers*, 391 U.S. 418, 426 n. 8, 88 S.Ct. 1717, 1723 n. 8, 20 L.Ed.2d 706, 713 n. 8 (1968); *Hayes v. Secretary of Defense*, 169 U.S.App.D.C. 209, 216, 515 F.2d 668, 675 (1975); *Douglas v. Hampton*, 168 U.S.App.D.C. 62, 74–76, 512 F.2d 976, 988–990 (1974); *Local 1668, American Fed'n of Gov't Employees v. Dunn*, 561 F.2d 1310, 1314 (9th Cir. 1976).

**39.** As the Court wrote in *Weinberger v. Salfi, supra* note 34, interpreting Social Security Act provisions mandating a final decision of the Secretary prior to judicial review, see 42 U.S.C. §§ 405(g), (h) (1976), such a requirement presents "something more than simply a codification of the judicially developed doctrine of exhaustion," 422 U.S. at 766, 95 S.Ct. at 2467, 45 L.Ed.2d at 539; it is, in fact, "a statutorily specified jurisdictional prerequisite." *Id.* And as this court has noted, such a statute "exacts an administrative determination as a jurisdictional postulate." *Association of Am. Medical Colleges v. Califano*, 186 U.S.App.D.C. 270, 278, 569 F.2d 101, 109 (1977) (dealing with the Medicare Act, 42 U.S.C. § 1395oo (1976)).

**40.** 7 U.S.C. § 608c(15)(A) (1976), quoted *supra* note 11.

**41.** See *id.*

**42.** *Id.*

**43.** 7 U.S.C. § 608c(15)(B) (1976).

For more than 35 years the Act has been interpreted as establishing exhaustion of administrative remedies as a jurisdictional precondition to judicial review.[44] The leading precedent is the Supreme Court's decision in *United States v. Ruzicka*,[45] holding that in an enforcement proceeding brought by the Secretary a handler may not assert as a defense the invalidity of a provision in a marketing order with which he failed to comply unless he has first sought to challenge that provision pursuant to Section 8c(15)(A).[46] Congress has erected a procedure whereby handlers, unlike producers,[47] may seek administrative and judicial relief from unlawful provisions in marketing or-

ders, and "[a]s to them," the Court declared, "the procedural scheme is complete." [48] And while in the years since *Ruzicka* was decided this court has never spoken directly on the matter,[49] a host of other federal courts considering Section 8c(15)(A) in the context of a handler's challenge to agency action have required administrative remedies to be exhausted before they would assume jurisdiction,[50] and the opinions in those cases are replete with references to lack of jurisdiction of the courts prior thereto.[51]

That the instant suit is not an enforcement effort by the Secretary does not render *Ruzicka* inapposite.[52] The statutory

**44.** See cases cited *infra* notes 45, 50.

**45.** *Supra* note 34. See also *United States v. Ideal Farms, Inc.*, 262 F.2d 334 (3d Cir. 1958); *United States v. Lamars Dairy, Inc.*, 500 F.2d 84, 85–86 (7th Cir. 1974); *United States v. Turner Dairy Co.*, 166 F.2d 1, 3–4 (7th Cir.), *cert. denied*, 335 U.S. 813, 69 S.Ct. 29, 93 L.Ed. 368 (1948).

**46.** 329 U.S. at 290–295, 67 S.Ct. at 208–211, 91 L.Ed. at 293–296.

**47.** See *Stark v. Wickard*, 321 U.S. 288, 308–311, 64 S.Ct. 559, 570–571, 88 L.Ed. 733, 747–748 (1944); *Dairylea Coop., Inc. v. Butz*, 504 F.2d 80, 82–83 (2d Cir. 1974).

**48.** *United States v. Ruzicka, supra* note 34, 329 U.S. at 295, 67 S.Ct. at 211, 91 L.Ed. at 295.

**49.** In *Benson v. Schofield*, 98 U.S.App.D.C. 424, 427, 236 F.2d 719, 722 (1956), *cert. denied*, 352 U.S. 976, 77 S.Ct. 363, 1 L.Ed.2d 244 (1957), dealing with the availability of administrative remedies for producers, we did state that "[t]here is no provision authorizing interference with the administrative plan. When we have in mind the purposes of the legislation, it is difficult to see how Congress in these respects could more effectively have expressed its will than a mere reading of the Act. If appellees were to be deemed handlers, they would be bound by the administrative remedy and the judicial review provisions of the Act."

**50.** *United States v. Lewes Dairy, Inc.*, 337 F.2d 827, 832 (3d Cir. 1964), *cert. denied*, 379 U.S. 1000, 85 S.Ct. 720, 13 L.Ed.2d 702 (1965); *United States v. Ideal Farms, Inc., supra* note 45, 262 F.2d at 334; *Willow Farms Dairy, Inc. v. Benson*, 276 F.2d 856 (4th Cir. 1960); *United States v. Lamars Dairy, Inc., supra* note 45, 500 F.2d at 85; *United States v. Turner Dairy Co., supra* note 45, 166 F.2d at 3–4; *Rasmussen v.*

*Hardin*, 461 F.2d 595, 597–598 (9th Cir.), *cert. denied*, 409 U.S. 933, 93 S.Ct. 230, 34 L.Ed.2d 188 (1972); *LaVerne Co-op. Citrus Ass'n v. United States*, 143 F.2d 415 (9th Cir. 1944); *United States v. Brown*, 211 F.Supp. 953, 956 (D.Colo.1962); *Gudgel v. Iverson*, 87 F.Supp. 834, 840 (W.D.Ky.1949); *Sanitary Dairy Prods., Inc. v. Cook*, 211 F.Supp. 183, 185 (W.D.La. 1962); *United States v. Sanitary Dairy Prods., Inc.*, 211 F.Supp. 185, 187 (W.D.La.1962); *Inter-State Milk Producers Coop., Inc. v. St. Clair*, 314 F.Supp. 108, 111 (D.Md.1970); *United States v. Melenyzer*, 390 F.Supp. 960, 961 (W.D.Pa.1975); *United States v. Abbotts Dairies*, 315 F.Supp. 571, 573 (E.D.Pa.1970); *Hygeia Dairy Co. v. Benson*, 151 F.Supp. 661, 663 (S.D. Tex.1957); *Uelman v. Freeman*, 267 F.Supp. 842, 845 (E.D.Wis.), *aff'd*, 388 F.2d 308 (7th Cir. 1967), *cert. denied*, 390 U.S. 1026, 88 S.Ct. 1413, 20 L.Ed.2d 283 (1968).

**51.** *E. g., United States v. Sanitary Dairy Prods., Inc., supra* note 50, 211 F.Supp. at 187 ("[t]he remedy provided by the Congress is exclusive and this Court is without jurisdiction to review the Secretary's order until the administrative remedy has been exhausted . . ."); *Inter-State Milk Producers Coop., Inc. v. St. Clair, supra* note 50, 314 F.Supp. at 111 ("[i]t is quite clear under the authorities that this Court has no jurisdiction . . . in such a proceeding, as this, at the suit of a handler . . ."). These interpretations are consistent with the legislative history of Section 8c(15), which teaches that after a final determination by the Secretary, "[t]he petitioner may *then*, if he desires, file a bill in equity in the Federal courts. . . ." H.R.Rep. No. 1241, 74th Cong., 1st Sess. 14 (1935); S.Rep. No. 1011, 74th Cong., 1st Sess. 14 (1935) (emphasis added).

**52.** *Benson v. Schofield, supra* note 49, 98 U.S. App.D.C. at 427, 236 F.2d at 722; *Rasmussen v. Hardin, supra* note 50, 461 F.2d at 597–598;

scheme is equally frustrated when a handler does not exhaust the administrative remedies before seeking the aid of the courts in his behalf. Said the *Ruzicka* Court:

> Congress has provided a special procedure for ascertaining whether such an order is or is not in accordance with law. The questions are not, or may not be, abstract questions of law. Even when they are formulated in constitutional terms, they are questions of law arising out of, or entwined with, factors that call for understanding of the milk industry. And so Congress has provided that the remedy in the first instance must be sought from the Secretary of Agriculture. It is on the basis of his ruling, and of the elucidation which he would presumably give to his ruling, that resort may be had to the courts.[53]

To be sure, appellants participated to some extent in the 1976 supplemental rulemaking hearings, and prior thereto had secured the opinion of the judicial officer on several of their contentions. But, as the Supreme Court has declared, "[t]he [exhaustion] doctrine, wherever applicable, does not require merely the initiation of prescribed administrative procedures. It is one of exhausting them, that is, of pursuing them to their appropriate conclusion, and, correlatively, of awaiting their final outcome before seeking judicial intervention."[54] Appellants obviously did not meet that standard, for they never asked the judicial officer to pass on the 1976 orders rejecting advance announcement of minimum prices for class II milk.

## B. Asserted Exceptions to Exhaustion

Appellants urge essentially three objections to application of exhaustion principles to their suit. First, they argue that the 1976 supplemental rulemaking proceeding was a legal nullity, and that all required administrative recourse had therefore been taken when the judicial officer issued his ruling on the order culminating the 1970–74 rulemaking proceeding.[55] The officer, they say, upon concluding that the 1970–74 record did not support the retroactive-announcement provision for class II milk on its stated rationale, was obliged by the terms of the statute to order "final" relief in the form of advance notice;[56] the 1976 supplemental proceeding, they further say, was procedurally flawed.[57] Secondly, appellants maintain that the purely legal arguments they have advanced against retroactive announcement of minimum class II milk prices are exempt from any duty which they otherwise might have had to exhaust.[58] Thirdly, they insist that any attempt to secure further relief from the judicial officer subsequent to the 1976 supplemental proceeding would have been futile, and would only have delayed relief already overdue.[59]

The last contention immediately encounters serious difficulty. I agree that in the absence of statutory constraint the exhaus-

---

*Gudgel v. Iverson, supra* note 50, 87 F.Supp. at 840; *Willow Farms Dairy, Inc. v. Benson,* 181 F.Supp. 798, 800 (D.Md.), *aff'd* 276 F.2d 856 (4th Cir. 1960); *Avon Dairy Co. v. Eisaman,* 69 F.Supp. 500, 501–502 (E.D.Ohio 1946); *Hygeia Dairy Co. v. Benson, supra* note 50, 151 F.Supp. at 662–663.

53. *United States v. Ruzicka, supra* note 34, 329 U.S. at 294, 67 S.Ct. at 210, 91 L.Ed. at 295.

54. *Aircraft & Diesel Equip. Corp. v. Hirsch,* 331 U.S. 752, 767, 67 S.Ct. 1493, 1500, 91 L.Ed. 1796, 1806 (1947). Accord, *American Fed'n of Gov't Employees v. Acree,* 155 U.S.App.D.C. 20, 23, 475 F.2d 1289, 1292 (1973); *Spanish Int'l Broadcasting Co. v. FCC,* 128 U.S.App. D.C. 93, 102–103, 385 F.2d 615, 624–625 (1967); *Coy v. Folsom,* 228 F.2d 276, 280 (3d Cir. 1955);

*Union Oil Co. v. FPC,* 236 F.2d 816, 819–820 (5th Cir. 1956), *cert. denied,* 352 U.S. 969, 77 S.Ct. 360, 1 L.Ed.2d 323 (1957); *Jordan v. United States,* 522 F.2d 1128, 1132 (8th Cir. 1975); *Home Loan Bank Bd. v. Mallonee,* 196 F.2d 336, 381 (9th Cir. 1952), *cert. denied,* 345 U.S. 952, 73 S.Ct. 863, 97 L.Ed. 1374 (1953).

55. Brief for Appellants at 38–39.

56. See 7 U.S.C. § 608c(15)(A) (1976), quoted *supra* note 11.

57. Brief for Appellants at 34–37.

58. *Id.* at 39.

59. *Id.*

tion rule presupposes an efficacious administrative remedy.[60] I agree, too, that ordinarily exhaustion may be excused by delay when time is vital to the preservation of substantial rights.[61] But for situations like that at bar, it bears repeating, Congress has unexceptionally mandated exhaustion.[62] As the courts have uniformly viewed Section 8c(15)(A), it is more than a codification of the judicially-created exhaustion doctrine with its complement of largely discretionary exceptions intact; [63] rather, a final decision by the Secretary has consistently been deemed an absolute prerequisite to district court review.[64] On the other hand, no one

would be eager to say that Congress contemplated pursuit of an administrative remedy when it truly and patently would come to no more than an exercise in futility.

No such dilemma is faced in the instant case, however, for in my view appellants have not advanced adequate cause excusing their flat refusal to return to the judicial officer once the supplemental rulemaking proceeding had run its course. Their lament over delay is belied by the judicial officer's assurance in his earlier decision that he would hear and pass on all objections stemming from that proceeding within 85 days of its completion.[65] Their addi-

**60.** See *Humana of South Carolina, Inc. v. Califano, supra* note 36, 191 U.S.App.D.C. at 379, 590 F.2d at 1081; *Wallace v. Lynn*, 165 U.S.App.D.C. 363, 367, 507 F.2d 1186, 1190 (1974); *Lodge 1858, Am. Fed'n of Gov't Employees v. Paine*, 141 U.S.App.D.C. 152, 166, 436 F.2d 882, 896 (1970).

**61.** *E. g., Smith v. Illinois Bell Tel. Co.*, 270 U.S. 587, 591, 46 S.Ct. 408, 409, 70 L.Ed. 747, 749 (1926) (2-year delay in ending confiscatory rates); *Prendergast v. New York Tel. Co.*, 262 U.S. 43, 46–47, 43 S.Ct. 466, 468, 67 L.Ed. 853, 856–857 (1923) (7-month delay in granting rate increases, coupled with prospect for further delay); *Environmental Defense Fund v. Hardin*, 138 U.S.App.D.C. 391, 397–398, 428 F.2d 1093, 1099–1100 (1970) (total administrative inaction); Note, *Judicial Acceleration of the Administrative Process: The Right to Relief from Unduly Protracted Proceedings*, 72 Yale L.J. 574 (1963).

**62.** See text *supra* at notes 39–51.

**63.** See cases cited *supra* note 50. None of the authorities proffered by appellants addressed a cognate situation—one wherein the statute itself unqualifiedly demands exhaustion. *NLRB v. Industrial Union of Marine & Shipbldg. Workers, supra* note 38, 391 U.S. at 423–428, 88 S.Ct. at 1721–1724, 20 L.Ed.2d at 711–714, held that a union's internal exhaustion requirements were not a jurisdictional bar to a federal court action. See also *Chambers v. Local Union No. 639*, 188 U.S.App.D.C. 133, 141–146, 578 F.2d 375, 383–388 (1978). *McNeese v. Board of Educ.*, 373 U.S. 668, 672–676, 83 S.Ct. 1433, 1435–1438, 10 L.Ed.2d 622, 625–628 (1963), held that 42 U.S.C. § 1983 (1976) created a right of action predominant over state law, and that a plaintiff need not exhaust available state remedies prior to invoking federal court aid thereunder. Other cases all dealt with federal statutes, but none was similar to the one involved here. See *American Fed'n of Gov't*

*Employees v. Acree, supra* note 54, 155 U.S.App.D.C. at 23, 475 F.2d at 1292 (regulations pursuant to 5 U.S.C. § 7501 (1970), which does not specifically require exhaustion); *Southern Christian Leadership Conference v. Connolly*, 331 F.Supp. 940, 944 (E.D.Mich.1971) (regulations promulgated pursuant to 15 U.S.C. § 634 (1976), which does not exact exhaustion prior to gaining court jurisdiction); *Wallace v. Lynn, supra* note 60, 165 U.S.App.D.C. at 367, 507 F.2d at 1190 (two possible courses of relief apparently provided by a statute which did not explicitly demand exhaustion); *Blackwell College of Business v. Attorney Gen.*, 147 U.S.App.D.C. 85, 92, 454 F.2d 928, 935 (1971) ("[n]either the statute . . . nor the applicable regulations, sets forth any clear-cut administrative procedure . . . .").

Appellants also cite *Natural Resources Defense Council v. Train*, 166 U.S.App.D.C. 312, 323, 510 F.2d 692, 703 (1975), for the proposition that the court "may proceed promptly to merits when it is confident that agency recourse is futile, as where agency's position is firm." Brief for Appellants at 39–40 n. **. *Train* has no relevance whatsoever to the instant situation; it focused on jurisdiction pursuant to 28 U.S.C. § 1331 (1976) and the Administrative Procedure Act, not with a mandatory statute, and involved an agency attempting to argue failure to exhaust for the first time on appeal. The instant case is completely different: here the statute is mandatory and the agency has continually asserted that appellants must exhaust their administrative remedies. Nor do I accept appellants' contentions that the agency has established an immutable position. See notes 65–67 *infra* and accompanying text.

**64.** See cases cited *supra* note 50.

**65.** See note 22 *supra*. Appellants undoubtedly would have liked an even more rapid resolution of their claims, but it must be realized that the administrative process is not always as speedy

tional plaint—that efforts to secure relief from the judicial officer would obviously have failed—turns a deaf ear to his avowal that he could and would grant affirmative relief on a sufficiently strong record.[66] It also ignores the officer's authority and presumed willingness to rectify the assertedly one-sided nature of the supplemental proceeding were he to find that to have been the fact.[67]

Appellants' second argument—that exhaustion is simply unnecessary with respect to their wholly legal complaints—ordinarily would give little pause. As the Ninth Circuit has observed, the Supreme Court's decision in *Ruzicka*[68] indicates that the "administrative remedy should be employed even though the matter to be reviewed [is] essentially a legal or a constitutional question,"[69] and this view, I believe, is eminently sound. The courts strive, as they must, to follow a path of strict adjudicative necessity in reaching constitutional issues,[70] and insist

upon exhaustion of administrative recourse as a forerunner to a constitutional affray in court.[71] Had appellants returned to the judicial officer after compiling a substantial record at the 1976 supplemental hearing, they might have been awarded the advance-announcement provision they seek for class II milk prices, with the result that a constitutional confrontation on their due process claim would have been completely avoided.[72] Moreover, judges are obliged to yield appropriate deference to an agency's consistent, considered interpretation of its governing statute;[73] and a rule permitting handlers to challenge constitutionally, without first exhausting their administrative remedies, a term in a milk-marketing order as contrary to the Act would often deprive the court of the benefit of the views of those possessed of day-to-day experience in administering the federal milk-marketing program.[74]

as might be desired. See *Kessler v. FCC*, 117 U.S.App.D.C. 130, 141 n. 10, 326 F.2d 673, 684 n. 10 (1963) (time for holding hearings is within agency's discretion if not excessive); *Harvey Radio Laboratories, Inc. v. United States*, 110 U.S.App.D.C. 81, 83, 289 F.2d 458, 460 (1961) ("long and unfortunate" delay is not always "unnecessary"). Nor can we conclude on the record before us that any delay conceivably would be attributable to consciously dilatory actions of any of the participants. See *Smith v. Illinois Bell Tel. Co.*, *supra* note 61, 270 U.S. at 591, 46 S.Ct. at 409, 70 L.Ed. at 749; *Chambers v. Local Union No. 639, supra* note 63, 188 U.S.App.D.C. at 141–143, 578 F.2d at 386–388; *cf.* M. Green, The Other Government 138, 143–145, 192–196 (1975).

66. See *Babcock Dairy Co., supra* note 5, at 23, J.App. 129.

67. Appellants complain that "[t]he 1976 proceedings did not represent either in substance or form the kind of open forum contemplated by Congress for the ventilation of issues relating to amendments to Marketing Orders." Brief for Appellants at 37. Had they persuaded the judicial officer to this point of view, he might have issued detailed instructions for a prompt, fair hearing, or might even have conducted such a hearing himself.

68. *United States v. Ruzicka, supra* note 34; see text *supra* at notes 45–48.

69. *Rasmussen v. Hardin, supra* note 50, 461 F.2d at 597–598.

70. *Rosenberg v. Fleuti*, 374 U.S. 449, 451, 83 S.Ct. 1804, 1806, 10 L.Ed.2d 1000, 1002 (1963); *Bush v. Texas*, 372 U.S. 586, 590, 83 S.Ct. 922, 925, 9 L.Ed.2d 958, 960 (1963); *Stefanelli v. Minard*, 342 U.S. 117, 120, 72 S.Ct. 118, 120, 96 L.Ed. 138, 142 (1951).

71. See, *e. g., Aircraft & Diesel Equip. Corp. v. Hirsch, supra* note 54, 331 U.S. at 772, 67 S.Ct. at 1503, 91 L.Ed. at 1808; *Wallace v. Lynn, supra*, note 60, 165 U.S.App.D.C. at 367, 507 F.2d at 1190; *National Lawyers Guild v. Brownell*, 96 U.S.App.D.C. 252, 256, 225 F.2d 552, 556 (1955), *cert. denied*, 351 U.S. 927, 76 S.Ct. 778, 100 L.Ed. 1457 (1956); *Murillo v. Mathews*, 588 F.2d 759, 761–762 (9th Cir. 1978). See also *W.E.B. Dubois Clubs of America v. Clark*, 389 U.S. 309, 312, 88 S.Ct. 450, 452, 19 L.Ed.2d 546, 549 (1967).

72. Compare *Wallace v. Lynn, supra* note 60, 165 U.S.App.D.C. at 367–368, 507 F.2d at 1190–1191.

73. See, *e. g., Miller v. Youakim*, 440 U.S. 125, 144 n. 25, 99 S.Ct. 957, 969 n. 25, 59 L.Ed.2d 194, 209 n. 25 (1979); *Red Lion Broadcasting Co. v. FCC*, 395 U.S. 367, 381, 89 S.Ct. 1794, 1801–1802, 23 L.Ed.2d 371, 383–384 (1969); *Zemel v. Rusk*, 381 U.S. 1, 11, 85 S.Ct. 1271, 1278, 14 L.Ed.2d 179, 187 (1965).

74. See text *supra* at note 53. Exhaustion is peculiarly appropriate when the litigation makes demands upon the agency's expertise in

## C. *Decisional Finality*

My colleagues hold that appellants have sufficiently exhausted their administrative remedies because they sought and obtained a ruling from the judicial officer prior to the 1976 supplemental rulemaking proceeding.[75] They deem irrelevant the fact that the officer felt that he then had before him a record inadequate to support affirmative relief, and thus deferred any decision on the merits until the Department made more complete factual findings. Their conclusion apparently rests upon the premise that merely approaching the judicial officer at an intermediate stage of the administrative process made his response sufficiently "final" for purposes of review.

Without a doubt, exhaustion and finality are "inextricably intertwined;"[76] equally indisputably, the label placed upon a ruling by an agency is not conclusive on the question of the finality requisite.[77] But the

purpose of the law in requiring both exhaustion and finality is to afford the agency the opportunity to assemble a record and reach its conclusions, and only after that is judicial review appropriate.[78] That this has not been achieved in the present case is exemplified by the court's remand for further administrative proceedings. And the court does not question the Secretary's repeated assertions that the record does not support the imposition of advance notification of prices minimally to be paid for class II milk.[79]

There is a complicating factor, however. The Secretary maintains that appellants' objections to the 1970-71 rulemaking proceeding and the resulting 1974 decision were mooted by the 1976 proceeding,[80] and that their complaints about the 1976 proceeding are premature because of their failure to seek administrative review thereof.[81] The Secretary nevertheless concurs [82] in appellants' argument, as did the District

the administration of a complex statutory scheme. *Weinberger v. Bentex Pharmaceuticals, Inc.*, 412 U.S. 645, 654, 93 S.Ct. 2488, 2494, 37 L.Ed.2d 235, 242 (1973); *Parisi v. Davidson, supra* note 34, 405 U.S. at 37, 92 S.Ct. at 818, 31 L.Ed.2d at 25; *McKart v. United States, supra* note 34, 395 U.S. at 194, 89 S.Ct. at 1663, 23 L.Ed.2d at 203–204; *American Fed'n of Gov't Employees v. Acree, supra* note 54, 155 U.S.App.D.C. at 23, 475 F.2d at 1292; *Marshall v. Northwest Orient Airlines, Inc.*, 574 F.2d 119, 122 (2d Cir. 1978); *Seepe v. Department of Navy*, 518 F.2d 760, 764 (6th Cir. 1975); *Montgomery v. Rumsfeld, supra* note 36, 572 F.2d at 254; *Jette v. Bergland*, 579 F.2d 59, 62 (10th Cir. 1978).

**75.** Maj.Op. text at notes 55–57.

**76.** *Id.*, text following note 62.

**77.** *Id.*, text at note 60, citing *Fidelity Television, Inc. v. FCC*, 163 U.S.App.D.C. 441, 446, 502 F.2d 443, 448 (1974). I do not argue with the proposition that an order may be considered "final" for purposes of review when it " 'impose[s] an obligation, den[ies] a right, or fix[es] some legal relationship as a *consummation* of the administrative process,' " *id.*, quoting *Chicago & So. Air Lines v. Waterman S.S. Corp.*, 333 U.S. 103, 113, 68 S.Ct. 431, 437, 92 L.Ed. 568, 577 (1948) (emphasis added). The court states that "legal consequences" flowed from the judicial officer's 1976 denial of imposition of advance notice on an inadequate record, Maj.Op., 201 U.S.App.D.C. at ——, 627 F.2d at

1260, but this misses the point. The "legal consequence" was simply that appellants were forced to operate under preexisting governmental regulations which had not yet been suitably established as either valid or invalid, while a new effort to adjudge their status was ongoing. Moreover, the decision of the judicial officer cannot be said to have "consummated" the administrative proceeding in any fashion similar to that in *Fidelity Television*. And the court's implication that judicial review in this case does not appreciably disrupt agency proceedings is refuted by the facts. It has impeded an administrative resolution that might have been forthcoming as early as 1976, and the court forecloses the Secretary from exercising his discretion on interim price-announcing when it inflicts its own notions of interim remediation.

**78.** *McKart v. United States, supra* note 34, 395 U.S. at 193–194, 89 S.Ct. at 1662, 23 L.Ed.2d at 203. See also *United States v. Ruzicka*, quoted in text *supra* at note 48.

**79.** See Maj.Op., text at note 66.

**80.** Brief for Appellees at 10, citing *F. H. Vahlsing, Inc. v. United States*, 367 F.2d 577 (5th Cir. 1966).

**81.** Brief for Appellees at 10–17.

**82.** Brief for Appellees at 17.

Court,[83] that the pure questions of law that they raise are ripe for judicial consideration and should be resolved now, a view, as already explained, I do not share.[84] But I do believe the Secretary has some discretion regarding the timing and content of the final decisions he renders under Section 8c(15)(A),[85] and thus face the question whether the Secretary's concession means that he has in effect dispensed with a conventional final decision, at least for the time being.

On balance, I think not, nor do I think the judicial officer's order may properly be taken as final. Though the officer has been granted authority to issue final rulings under Section 8c(15)(A),[86] he remitted appellants to additional rulemaking on the price-announcement issue, and his order specified that "[j]urisdiction of this proceeding is retained by the Judicial Officer for the purpose of issuing a final Decision and Order following whatever corrective action is taken by the Secretary with respect to such provisions."[87] The order thus viewed the officer's decision as open to revision upon completion of the supplemental rulemaking proceeding, and it held out the promise of appropriate relief.

This order, like that of a court remanding for trial,[88] was not final for purposes of judicial review. The Secretary does not contend that the judicial officer issued a decision final in that sense; indeed, he opposes review of any fact-dependent issue.[89] So, far from making any concession on deci-

sional finality, the Secretary has merely taken a mistaken position on reviewability of the legal questions involved herein.[90] I conclude, then, that the constitutional and statutory arguments arrayed against retroactive notice of class II prices should not be resolved at this time; and I note that since the issue is not specifically addressed in the court's opinion, my colleagues do not appear to disagree.

### III. THE JUDICIAL OFFICER'S DISPOSITION

As previously mentioned, appellants also assert that the judicial officer lacked authority to defer issuance of a final order pending further proceedings on the price-notification issue by departmental officials to whom the rulemaking function was committed. Insofar as this may be a challenge to the officer's ruling that the record compiled during the 1970–71 hearings did not justify a determination that advance announcement of minimum class II milk prices would serve the policies of the Act, it falls squarely within the group of matters barred by the appellants' failure to exhaust to the end.[91] There is force in the contention that a withholding of judicial relief from the officer's remand-type disposition works a hardship by subjecting appellants to the trouble and expense of additional proceedings, but the argument proves too much. When a decision—whether administrative or judicial—is erroneous, the affect-

83. *American Dairy v. Butz, supra* note 7, at 19, J.App. 219.

84. See text *supra* at notes 69–74.

85. Instructive on this score are decisions construing § 205(g) of the Social Security Act, 42 U.S.C § 405(g) (1976). See *Mathews v. Diaz, supra* note 36, 426 U.S. at 75–77, 96 S.Ct. at 1889–1890, 48 L.Ed.2d at 487–488; *Weinberger v. Salfi, supra* note 34, 422 U.S. at 766–767, 95 S.Ct. at 2467–2468, 45 L.Ed.2d at 539–540; *Wright v. Califano,* 587 F.2d 345, 353–354 (7th Cir. 1978); *cf. Mathews v. Eldridge, supra* note 36, 424 U.S. at 328–332, 96 S.Ct. at 899–901, 47 L.Ed.2d at 29–31.

86. 37 Fed.Reg. 28475 (1972); 38 Fed.Reg. 10795 (1973).

87. *Babcock Dairy Co., supra* note 5, at 25, J.App. 131. See also note 22 *supra.*

88. See 28 U.S.C. § 1257 (1976) (Supreme Court review of state court decisions); see generally, *Cox Broadcasting Corp. v. Cohn,* 420 U.S. 469, 476–487, 95 S.Ct. 1029, 1036–1042, 43 L.Ed.2d 328, 338–334 (1975). Contrast the power of the Supreme Court to review on certiorari "any civil or criminal case" in a court of appeals "before or after rendition of judgment." 28 U.S.C. § 1254(1) (1976).

89. Brief for Appellees at 10–17.

90. See Part II(A) *supra.*

91. Brief for Appellants at 30–34.

ed party is nearly always confronted by the need for further proceedings to secure his due—at least, that was standard prior to the interim relief granted by the court in this case.[92] Nonetheless, the agency must usually be given the opportunity to correct its mistake and render judicial intervention unnecessary; by the same token, interlocutory review simply upon the disappointed party's allegation of error undermines the very foundations of the exhaustion doctrine.[93]

Appellants mount, however, a broader attack on the judicial officer's disposition. They maintain that the officer's obligation to make a ruling which, in the words of the statute, "shall be final, if in accordance with law,"[94] required him in all circumstances to award final relief without indulging in what in effect was a remand for further rulemaking proceedings.[95] In terms of the necessity of exhaustion, this argument stands on a somewhat different footing from appellants' other contentions. It is not a claim that some feature of a milk-marketing order is contrary to law—a claim plainly captured by the administrative scheme projected in Section 8c(15)(A).[96] Instead, it is an assault on the officer's authority with respect to disposition of petitions for review of marketing orders. Under authority controlling on nonjurisdiction-

al exhaustion requirements, an affected party may challenge the legal efficacy of an administrative procedure in court without first pursuing that procedure,[97] for "the question of the adequacy of the administrative remedy [is] for all practical purposes identical with the merits of [the party's] lawsuit."[98] I need not undertake to determine whether this principle applies when exhaustion is jurisdictional,[99] for I am satisfied that the judicial officer has power to relegate invalid milk-marketing orders to supplemental rulemaking proceedings rather than promulgate valid orders *de novo*.

Section 8c(15)(A) instructs the Secretary to "make a ruling upon the prayer of [a handler's] petition which shall be final, if in accordance with law."[100] Appellants contend that this directive compelled the judicial officer—the Secretary's delegate[101]—upon concluding that the existing retroactive-notification provision for class II milk prices was invalid for lack of adequate record support, to require advance notice forthwith.[102] It might first be noted that Section 8c(15)(A) does not in terms require a final ruling; it merely declares the effect of the ruling: that it "shall be final, if in accordance with law."[103] Thus the section, read literally, does not support appellants' position. The greater difficulty in appel-

---

**92.** See Part IV *infra*.

**93.** *Myers v. Bethlehem Shipbldg. Corp.*, 303 U.S. 41, 51–52, 58 S.Ct. 459, 463–464, 82 L.Ed. 648, 644–645 (1938); *cf. Petroleum Exploration, Inc. v. Public Serv. Comm'n*, 304 U.S. 209, 222, 58 S.Ct. 834, 841, 82 L.Ed. 1294, 1303 (1938) (neither litigation nor administrative proceedings should be enjoined or circumvented merely because expensive or burdensome).

**94.** See 7 U.S.C. § 608c(15)(A) (1976), quoted *supra* note 11.

**95.** Brief for Appellants at 30–34.

**96.** See 7 U.S.C. § 608c(15)(A) (1976), quoted *supra* note 11; *cf. Humana of South Carolina, Inc. v. Califano, supra* note 36, 191 U.S.App. D.C. at 378–380, 590 F.2d at 1080–1082 (direct judicial review appropriate when claim not susceptible to administrative correction).

**97.** *Barry v. Barchi*, 443 U.S. 55, 63 n. 10, 99 S.Ct. 2642, 2648 n. 10, 61 L.Ed.2d 365, 374 n. 10 (1979); *Allen v. Grand Cent. Aircraft Co.*, 347 U.S. 535, 540–553, 74 S.Ct. 745, 748–755, 98 L.Ed. 933, 939–946 (1954); *Blackwell College of Business v. Attorney Gen., supra* note 63, 147 U.S.App.D.C. at 92, 454 F.2d at 935; see L. Jaffe, Judicial Control of Administrative Action 440 (1965).

**98.** *Barry v. Barchi, supra* note 97, 443 U.S. at 63 n. 10, 99 S.Ct. at 2648 n. 10, 61 L.Ed.2d at 374 n. 10, quoting *Gibson v. Berryhill*, 411 U.S. 564, 575, 93 S.Ct. 1689, 1696, 36 L.Ed.2d 489, 497–498 (1973).

**99.** See text *supra* at notes 44–51.

**100.** 7 U.S.C. § 608c(15)(A) (1976), quoted *supra* note 11.

**101.** See note 16 *supra* and accompanying text.

**102.** Brief for Appellants at 30–31.

**103.** See text *supra* at note 100.

lants' thesis is that it runs afoul of the statutory command that all provisions in milk-marketing orders "tend to effectuate the declared policy" of the Act.[104] It certainly is not a novel proposition that regulatory activities must hew to the goals that Congress establishes for them,[105] which in this instance include protection of producer and consumer interests as well as those of handlers.[106] Here, in the judicial officer's opinion, the evidence of record was insufficient to warrant a finding that advance notification of minimum prices for class II milk would promote the statutory objectives.[107]

Appellants' argument at this point, which my colleagues appear to accept without question,[108] is that the judicial officer's finding that retroactive announcement of minimum class II milk prices was not adequately supported by the evidence and hence was not in accordance with law was equivalent to a finding that retroactive notification of those prices did not "tend to effectuate the policies of the Act." [109] Therefore, so the reasoning seemingly goes, since that process of notification was not "in accordance with law," the judicial officer was statutorily bound to order advance notification.[110] In my view, this conclusion follows neither from the officer's action nor from the force of logic.

All the judicial officer ever held was that common treatment of class II milk and class III milk in retroactive price-announcing—

merely because class II milk was deemed, without explanation, to be similar to class III milk—was not supported by the evidence.[111] The officer did not find that retroactive notification of regulated class II milk prices was actually in opposition to the policies of the Act, and he specifically declined to infer that advance notification of those prices would contribute to effectuation of those policies.[112] His conclusion simply was that there was insufficient record evidence to justify identical price-announcing for the two classes of milk, and thus that as a procedural matter the retroactive-notification provision vis-a-vis class II milk prices had been promulgated by means "not in accordance with law." [113]

Appellants contend strenuously that the judicial officer's reading of the record was erroneous, and that there was evidence sufficient to warrant an order for advance notification of class II milk prices.[114] The court refuses to examine this claim,[115] a stand I am unable to reconcile with the relief that it ultimately grants. And if the court is correct that it need not explore the evidence to ascertain whether it could suitably underpin a requirement of advance announcement, I am unable to perceive any justification for the court's decision to disregard the officer's call for additional evidentiary presentations, particularly in light of the longstanding tradition of judicial deference to determinations of those

104. See 7 U.S.C. § 608c(4) (1976).

105. *United States v. Larinoff*, 431 U.S. 864, 873, 97 S.Ct. 2150, 2156, 53 L.Ed.2d 48, 56 (1977); *Manhattan Gen. Equip. Co. v. Commissioner*, 297 U.S. 129, 134, 56 S.Ct. 397, 400, 80 L.Ed. 528, 531 (1936); *Geller v. FCC*, 198 U.S. App.D.C. 31, 38, 610 F.2d 973, 980 (1979).

106. See 7 U.S.C. § 602(2) (1976); *Benson v. Schofield, supra* note 49.

107. *Babcock Dairy Co., supra* note 5, at 23–24, J.App. 129–130.

108. See Maj.Op., text at note 39.

109. Brief for Appellants at 33–34.

110. *Id.* See also Maj.Op., text following note 66.

111. *Babcock Dairy Co., supra* note 5, at 10–22, J.App. 116–128.

112. *Id.* at 23–24, J.App. 129–130. The judicial officer, far from holding that retroactive notice could not effectuate the statutory policies, stated that the Secretary's counsel, *in his brief* had made "a convincing showing" that retroactive notice "may be rationally justified." *Id.* at 14, J.App. 120. The problem, of course, was that this "convincing showing" appeared in the brief rather than in the record. *Id.* at 17–18, J.App. 123–124.

113. *Id.* at 25, J.App. 131.

114. Brief for Appellants at 31.

115. Maj.Op., text at note 66.

charged with the administration of this "exquisitely complicated" milk regulatory scheme.[116]

I do not reach the question of evidentiary sufficiency because I consider it barred by the exhaustion doctrine.[117] Assuming with the court, however, that the evidence did not adequately buttress a finding that advance notification of minimum class II milk prices would foster the policies of the Act,[118] it is clear that the judicial officer could not lawfully have afforded appellants the relief they requested. And with the evidence too weak to support any finding whatever on the service that either advance or retroactive announcing could lend toward effectuation of the legislative aims, the officer had no choice but to await the development of a suitable record.

I see nothing improper in the judicial officer's decision to leave that development to those charged with the duty of departmental rulemaking rather than to take it on himself. No statute or regulation specifically prohibited the course he adopted,[119] and certainly Section 8c(15)(A) was not infringed since responsibility for issuance of the final decision still remained upon the officer. Nor is it for us to say whether the officer's decision to enlist the aid of the Department's regular rulemaking officials to sift through the evidence—old and new— was soundly based in efficiency and fairness. As the Supreme Court has warned,

[a]bsent constitutional constraints or extremely compelling circumstances the "administrative agencies 'should be free to fashion their own rules of procedure and to pursue methods of inquiry capable of permitting them to discharge their multitudinous duties.' "[120]

No colorable constitutional or statutory objection to the course taken by the judicial officer appearing, this restricted standard of judicial scrutiny should prompt us to sustain the judicial officer's ruling.

## IV. RELIEF GRANTED BY THE COURT

My colleagues and I concur, though for different reasons, in the view that it is not propitious to decide on this appeal whether there was substantial evidence to support a call for advance announcement of minimum class II milk prices.[121] I would not analyze the record for that purpose because I believe appellants' failure to exhaust their administrative remedies is an insuperable barrier.[122] The court prefers, however, to parallel appellants' illogical suggestion that since retroactive notification was found to have been adopted by a procedure "not in accordance with law," that necessarily means, at least in the interim, that advance notice must be given,[123] a theory on which I have already expressed my disagreement.[124] So, for the interval between the court's remand and final agency decision, the court itself imposes the very same advance-an-

116. See *Queensboro Farms Prods., Inc. v. Wickard,* 137 F.2d 969, 974 (2d Cir. 1943). See also *United States v. Ruzicka, supra* note 34, 329 U.S. at 294, 67 S.Ct. at 210, 91 L.Ed. at 295, quoted in text at note 53 *supra*; *Zuber v. Allen,* 396 U.S. 168, 90 S.Ct. 314, 24 L.Ed.2d 345 (1969); *cf. Schepps Dairy v. Bergland, supra* note 4, text at notes 88–94.

117. See Part II *supra*.

118. This assumption is implicit in the court's ultimate disposition.

119. 7 C.F.R. § 900.66 (1979) contemplates no more than that the Secretary will at some time issue a final decision upon a handler's petition; and "the choice . . . between proceeding by general rule or by individual, *ad hoc* litigation is one that lies primarily in the informed discretion of the administrative agency." *SEC*

*v. Chenery Corp.,* 332 U.S. 194, 203, 67 S.Ct. 1575, 1580, 91 L.Ed. 1995, 2002 (1947).

120. *Vermont Yankee Nuclear Power Corp. v. Natural Resources Defense Counsel Inc.,* 435 U.S. 519, 543, 98 S.Ct. 1197, 1211, 55 L.Ed.2d 460, 479 (1978), quoting *FCC v. Schreiber,* 381 U.S. 279, 290, 85 S.Ct. 1459, 1467, 14 L.Ed.2d 383, 391 (1965), in turn quoting *FCC v. Pottsville Broadcasting Co.,* 309 U.S. 134, 143, 60 S.Ct. 437, 441, 84 L.Ed. 656, 662 (1940).

121. See text *supra* at note 117; Maj.Op., text at note 66.

122. See text *supra* at note 117.

123. Maj.Op., text at note 67.

124. See text *supra* at notes 100–113.

nouncement requirement that appellants sought from the Secretary—and that despite the unresolved question whether a full-blown evidentiary record would support advance notification, and even though neither the agency nor the court has ever found that advance notification would effectuate the purposes of the Act.

I cannot subscribe to this disposition. As the Supreme Court has admonished, "the function of the reviewing court ends when an error of law is laid bare. At that point the matter once more goes to the [agency] for reconsideration." [125] And as we ourselves have declared, "a court may not compel an administrative agency to pursue a particular course of action when another is open to it." [126] Surely we would not break new ground were we to leave the Secretary free to bring his own discretion to bear on whether past price-notification practice should continue or a new practice should be instituted while he proceeds to resolve the controversy thereover.[127] Not even appellants insist upon the court's interim measure as a matter of right; and particularly in a situation where, as here, the defect rendering retroactive announcement of minimum class II milk prices "not in accordance with law" was a paucity of evidence rather than a substantive infirmity, a court should not inflict its notions of administrative feasibility upon the body statutorily charged with making discretionary determinations.[128]

Ironically, in rationalizing its exaction of interim advance notification, the court engages in the same kind of reasoning that appellants challenged before the agency. This lawsuit came into being because the sole purported justification for inclusion of class II milk within the retroactive price-announcement system for class III milk was that the Secretary's rulemaking arm deemed the two classes similar. The administrative law judge and the judicial officer both concluded that this unsubstantiated premise was not sufficient to make out the case for inclusion.[129] The court now states that "Class I includes most milk" and that therefore, since common treatment of class II and class III milk for price-notification purposes was found to be procedurally invalid, "we think it most appropriate that Class I notice be used for Class II milk until the Secretary promulgates new notice provisions." [130] Not only is this merely a variation of the "similarity" argument which the judicial officer earlier found unacceptable but it is also an adoption of that argument—not by the agency whose constant involvement with the intricacies of milk regulation might entitle its judgment to a degree of deference, but rather by a court that has found no occasion to analyze the factual underpinnings of the three-tiered milk-pricing system.[131]

---

**125.** *FPC v. Idaho Power Co.*, 344 U.S. 17, 20, 73 S.Ct. 85, 86–87, 97 L.Ed. 15, 20 (1952). For a fuller discussion, see *FCC v. Pottsville Broadcasting Co., supra* note 120, 309 U.S. at 141–146, 60 S.Ct. at 440–443, 84 L.Ed. at 661–663.

**126.** *Public Serv. Comm'n. v. FPC*, 177 U.S.App. D.C. 272, 348 n. 42, 543 F.2d 757, 833 n. 42 (1975) (opinion denying rehearing). Of course, "we do not usurp an administrative prerogative when we direct a step which the [agency] is legally bound to take." *Id.* But only implausibly could it be suggested that force of law—instead of the court's own view—robs the Secretary of his normal discretion to determine whether advance or retroactive price-noticing as an interim measure better comports with the legislative scheme.

**127.** *E. g., Rodway v. Dep't of Agriculture*, 168 U.S.App.D.C. 387, 395, 514 F.2d 809, 817 (1975).

**128.** See *NLRB v. Pipefitters Union*, 429 U.S. 507, 522 n. 9, 97 S.Ct. 891, 900 n. 9, 51 L.Ed.2d 1, 15 n. 9 (1977), quoting *ICC v. Clyde S. S. Co.*, 181 U.S. 29, 32–33, 21 S.Ct. 512, 513–514, 45 L.Ed. 729, 731 (1901); see also *FPC v. Transcontinental Pipe Line Corp.*, 423 U.S. 326, 333–334, 96 S.Ct. 579, 583, 46 L.Ed.2d 533, 540 (1976).

**129.** *Babcock Dairy Co., supra* note 12, at 37, J.App. 88 (administrative law judge's decision); *Babcock Dairy Co., supra* note 5, at 10–22, J.App. 116–128 (judicial officer's decision).

**130.** Maj.Op., text following note 67.

**131.** The regulatory scheme maintains the sharp distinction between milk to be consumed in fluid form and that destined for manufacture into other dairy products. Under the tripartite classification of milk now incorporated in many marketing orders, all fluid milk is in class I and

The Department of Agriculture itself has never found that class II milk is not in fact sufficiently "similar" to class III milk to warrant the same retroactive-notification treatment that the letter has and concededly should have, but only that the original determination to that effect was unjustified on the record as it was at the time.[132]. My colleagues appear to equate this conclusion with a holding that class II milk is "similar" to that in class I. And by requiring interim

advance notification of class II milk prices while simultaneously ordering the Secretary to conduct appropriate proceedings leading to "a new notice provision supportable on the record," [133] they reverse decades of consistent regulatory practice without any reason to which I could subscribe. This consequence, I think, is particularly unacceptable in the context of a complex administrative scheme such as that in which the present contest is waged.[134]

---

all manufacturing milk is in classes II and III. No one contends that advance announcement of minimum prices for class III milk is appropriate. The court does not explain why it considers class II milk so much more similar to milk in class I than in class III.

**132.** *Babcock Dairy Co., supra* note 12, at 51–52, J.App. 102–103 (administrative law judge's decision) ("[a]s found and concluded herein the procedural requirements were not satisfied on one particular proposal and for that reason the provisions in the 40 orders providing for the delayed announcement of Class II prices are not in accordance with law"); *Babock Dairy Co., supra* note 5, at 17–18, J.App. 123–124 (judicial officer's decision) (essentially the same).

**133.** Maj.Op., text at note 66.

**134.** I need quote only this court's stated past practice with reference to the Act:

A court's deference to administrative expertise rises to zenith in connection with the intricate complex of regulation of milk marketing. Any court is chary lest its disarrangement of such a regulatory equilibrium reflect lack of judicial comprehension more than lack of executive authority.

*Blair v. Freeman,* 125 U.S.App.D.C. 207, 210, 370 F.2d 229, 232 (1966).

In addition to the argument that this interim relief is justified by similarity of the two classes of milk, my colleagues point to the time lapse since inauguration of the proceeding under review and declare that "the aggregate record of this decade-long administrative morass is equivalent to administrative action unlawfully withheld." Maj.Op., text at note 68. On this premise, they seek extra support from § 706(1) of the Administrative Procedure Act, which empowers a reviewing court to "compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1) (1976). I can neither reconcile their hypothesis with the record before us nor concur in their view that, even granting the underlying factual assumption, § 706(1) authorizes the relief ordered.

There is no basis in the record for a conclusion one way or the other on reasonableness of the first four-year period after the initial notice

of rulemaking was published in 1970; aside from positive indications that the agency had undertaken a formidable task the record is completely silent in that regard. The handlers filed the administrative complaint forerunning the instant action in July, 1974, and the judicial officer issued the ruling here challenged in April, 1976. See text *supra* at notes 11–17. Nothing in the record hints—indeed, appellants have never claimed—that as of that time there had been undue delay in the processing of the complaint. *Cf.* Brief of Appellants at 39–40 (grumbling only of delay during the 1976 supplemental rulemaking proceeding). The judicial officer, in his decision, promised that any challenge to the order emanating from the 1976 proceeding would be resolved within a maximum of 85 days from the time brought. See note 22 *supra*. The supplemental proceeding terminated in September, 1976, 41 Fed.Reg. 41427 (1976), and appellants notified the judicial officer the following month that they did not plan to accept his offer of expedited review, J.App. 197. I thus am unable to understand why the court blames the agency for delay, or why if any there was, it should be characterized as unreasonable. *Cf. Chromcraft Corp. v. United States Equal Employment Opportunity Comm'n,* 465 F.2d 745, 748 (5th Cir. 1972) (delay not unreasonable unless "it has resulted from slothfulness, lethargy, inertia or caprice"). The Secretary's rulemaking delegates have made mistakes, but administrators, like judges, are hardly error-free.

Moreover, even had there been unreasonable delay within the meaning of § 706(1), I know of no precedent for a reviewing court's imposition of its own brand of interim relief, particularly when it is devoid of record support. In the only cases I have found in this circuit granting relief on the ground of agency delay, we have, retaining jurisdiction, remanded to the agency for prompt action on the matter found to have been delayed. See *Nader v. FCC,* 172 U.S.App. D.C. 1, 25–26, 520 F.2d 182, 206–207 (1975); *Environmental Defense Fund v. Hardin, supra* note 61, 138 U.S.App.D.C. at 397–398, 428 F.2d at 1099–1100. And subsequent to the enactment of § 706(1) in its current form in 1966, the Supreme Court has warned of the danger invit-

In sum, I would hold that appellant's failure to exhaust their administrative remedies for relief from the ancient practice of retroactively announcing minimum prices for class II milk precludes judicial consideration in the present litigation of the lawfulness of that practice. I agree with the court that the Secretary is yet under a statutory responsibility to definitively determine just what type of price-notification for class II milk effectuates the goals of the Act. I see no basis, however, for the court's requirement of advance notification of class II pricing in the interim. The court obviously and understandably desires to relieve appellants from any need to process their milk under a price-announcement method that has been held to be procedurally defective. I think the question whether that method is to be changed, and if so when, remains in the first instance for the Secretary.

ed when an appellate court imposes specific interim relief while awaiting a decision from an administrative agency on remand. See *FPC v. Transcontinental Pipe Line Corp., supra* note 128, 423 U.S. at 333–334, 96 S.Ct. at 583, 46 L.Ed.2d at 540. I imply no view on whether § 706(1) can ever provide the basis for judicially-formulated interim relief; the parties have not raised that question, and certainly there is no need to address it. I suggest no more than that the answer seems much more complicated than the court's statement makes it appear.